**UNITED STATES of America, Appellee,**

v.

**William F. DiZENZO, Appellant.**

**No. 73-1876.**

United States Court of Appeals, Fourth Circuit.

Argued March 5, 1974.

Decided July 17, 1974.

John H. West, III, Baltimore, Md. [court-appointed counsel] for appellant.

Andrew Jay Graham, Asst. U. S. Atty. (George Beall, U. S. Atty. for the D. Maryland, on brief), for appellee.

Before WINTER, BUTZNER and FIELD, Circuit Judges.

BUTZNER, Circuit Judge:

William F. DiZenzo appeals from a judgment convicting him of selling counterfeit obligations of the United States. His principal assignment of error is that the government should not have been allowed to introduce proof of his conversations about other sales. We affirm because we conclude that the testimony was relevant and that its probative value outweighed the risk of undue prejudice to the accused.

The government established its case primarily through an accomplice, Eugene B. Powell, who testified that he purchased counterfeit bills from DiZenzo and that he then sold them to Peter B. Gorbea. After the government introduced its proof of the transaction charged in the indictment, the court permitted it to introduce evidence of three conversations DiZenzo had with Gorbea, two of which were recorded, and the recording of a telephone conversation he had with Powell. The recordings were made with the consent of Gorbea, an informer, and Powell, who, after his arrest, engaged DiZenzo in a discussion about another sale of counterfeit money.

The conversations with Gorbea took place about six weeks after the offense charged in the indictment. On the first

two occasions, DiZenzo spoke of plans to supply Gorbea with counterfeit bills. In the third conversation, DiZenzo was much more expansive. He talked freely with Gorbea about the source and availability of counterfeits, preferable denominations to buy, the difficulties encountered in passing large bills, methods of detecting counterfeits, and ways of improving their quality. He quoted prices and referred to a sale he made to Powell. On this occasion, DiZenzo displayed a $20 counterfeit bill which Gorbea described as being similar in appearance and serial number to the bills which he had acquired from Dizenzo through Powell.

The fourth conversation took place about nine weeks after the offense charged in the indictment. In it, Powell confirmed delivery of more "stuff" from DiZenzo at a price that would be right.

■ The several opinions in United States v. Woods, 484 F.2d 127 (4th Cir. 1973); United States v. Baldivid, 465 F.2d 1277 (4th Cir.), cert. denied, 409 U.S. 1047, 93 S.Ct. 519, 34 L.Ed.2d 499 (1972), and United States v. Mastrototaro, 455 F.2d 802 (4th Cir.), cert. denied, 406 U.S. 967, 92 S.Ct. 2411, 32 L.Ed.2d 666 (1972), thoroughly canvass the rules and authorities governing the admission of testimony about other criminal conduct of the defendant. Consequently, in this decision it is sufficient to note that while the general rule excludes evidence of similar acts for the purpose of depicting the evil character of the accused, exceptions that are justified by relevance to pertinent issues permit its introduction in a variety of situations. Indeed, evidence of similar acts is relevant to so wide and unclassifiable a range of issues that the exclusionary rule has become one of qualified admissibility, aptly phrased: "Evidence of other offenses may be received if relevant for any purpose other than to show a mere propensity or disposition on the

part of the defendant to commit the crime." United States v. Stirone, 262 F.2d 571, 576 (3rd Cir. 1959), reversed on other grounds, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

■ Resting its ruling on an established ground, the district court admitted DiZenzo's conversations because they were relevant to the issues of knowledge and intent. Admission, we believe, was warranted by law and fact. Cf. United States v. Baldivid, 465 F.2d 1277, 1280 (4th Cir.), cert. denied, 409 U.S. 1047, 93 S.Ct. 519, 34 L.Ed.2d .499 (1972); United States v. Samuel, 431 F.2d 610, 612 (4th Cir. 1970). By his plea of not guilty, DiZenzo put in issue every element of the crime with which he was charged. Flaherty v. United States, 355 F.2d 924, 926 (1st Cir. 1966). Therefore, the government had to prove that DiZenzo knowingly sold counterfeit bills with the intent that they should be passed as genuine.[1] His subsequent conversations disclosed his cost for the counterfeits and the prices he charged, the quality of the bills, and his source of supply. All of this was relevant to his knowledge and intent. His exhibition of a bill similar to those he had sold to Powell illustrates the relationship between his conversations and his crime. Although the conversations took place after the offense for which DiZenzo was indicted, they were relevant, for criminal intent may be inferred from subsequent as well as prior acts. Wood v. United States, 41 U.S. (16 Pet.) 332, 361, 10 L.Ed. 987 (1842). Furthermore, the nine week interval between the offense and the conversations did not render the latter too remote to be relevant. Cf. United States v. Corry, 183 F.2d 155, 157 (2d Cir. 1950) (3 year interval).

■■ Evidence of similar acts, however, may not be admitted simply because the extraneous conduct is relevant or because it falls within one or more of

---

1. DiZenzo was charged with violating 18 U.S.C. § 473 which provides:
"Whoever . . . sells . . . any . . . counterfeited . . . obligation or other security of the United States, with the intent that the same be passed, published, or used as true and genuine, shall be [punished]."

the traditional exceptions to the general exclusionary rule. The district judge, in the exercise of sound discretion, must also determine whether the probative value of the evidence "is outweighed by the risk that its admission will create a substantial danger of undue prejudice to the accused." United States v. Woods, 484 F.2d 127, 134 (4th Cir. 1973). In assessing probative value, the trial court must take into consideration not only relevance but also the necessity and reliability of the evidence. See United States v. Woods, 484 F.2d 127, 134 (4th Cir. 1973); United States v. Baldivid, 465 F.2d 1277, 1283 (4th Cir. 1972) (Sobeloff, J., dissenting). Here there can be little dispute about relevance, which we have already discussed, or reliability. The single unrecorded conversation with Gorbea was consistent with the subsequent recordings. The government established the genuineness of the recorded conversations not only through the participants, but also by playing the tapes to the jury. In this manner, the accuracy of DiZenzo's inculpatory statements was assured. We turn, therefore, to the necessity of the evidence, which in this case presents the most questionable factor.

■ Necessity must be appraised in the light of other evidence available to the government. See United States v. Hines, 470 F.2d 225, 228 (3rd Cir. 1972). The facts of DiZenzo's sale of counterfeit bills were sparse. Powell testified that DiZenzo told him he had counterfeit money or access to it. Later in the same month or early in the next, DiZenzo delivered to him a wrapped package without saying anything about its contents that Powell could recall.

There was no testimony that the package was opened in DiZenzo's presence. Three or four days later Powell paid DiZenzo $250 for the counterfeits, which had a face value of $1000. While a jury might draw the inference that DiZenzo knew the package contained counterfeit money which would be passed as genuine, his subsequent conversations furnished more dependable proof of his knowledge and intent. The evidence, we therefore conclude, was reasonably necessary to the government's case.

The district court took three precautions to minimize the prejudicial effect of DiZenzo's conversations. Confining the evidence to the discussion of counterfeiting, it excised from all of the tapes DiZenzo's references to stolen credit cards, wagering, weapons, and kidnapping. Because of the racial composition of the jury, the court also deleted all ethnic slurs. Finally, it instructed and cautioned the jury about the limitation on the use of evidence of similar acts in reaching a verdict. Balancing the undoubted probative value of the conversations against the reduced risk of undue prejudice resulting from the measures taken by the court, we find no abuse of discretion in the admission of the evidence.

■ The district court also ruled that the conversations could be introduced into evidence as admissions. We find no error in utilizing this additional ground of admissibility with respect to one of DiZenzo's conversations with Gorbea and Powell's telephone call. On both occasions, DeZenzo referred to the previous transaction with Powell, for which he was indicted.[2] His inculpatory statements were admissible because they ac-

---

2. The following excerpt is from the transcript of Gorbea's third conversation in which he and DiZenzo were discussing the price of counterfeit bills:
"Gorbea—You told me you already put 5 points on the 25. You said you paid 20 and put the 5 points on me. That's what you told me last time.
"DiZenzo—No I did not, I says I gave them to Gene [Powell] for the 25 points I

paid, I tried to buy a load off the guy for 20. He said if I took a load of 20 thousand or better he'd have given them to me for 20."
The following excerpt is from the recording of the telephone call:
"Powell—Ah, when you gonna get, you know that 'stuff that I got and gave to Pete [Gorbea]?
"DiZenzo—Ya

knowledged facts tending to prove his guilt. United States v. Rouse, 452 F.2d 311, 313 (5th Cir. 1971); *see* McCormick, Evidence 310 (1970).

We find no merit in DiZenzo's second assignment of error, which deals with the government's amendment of its bill of particulars changing the date of the crime. Allowance of the amendment was well within the bounds of discretion delineated by Rule 7(f) of the Federal Rules of Criminal Procedure.[3]

Affirmed.

"Powell—When you gonna get some more?

"DiZenzo—Thursday, I told you that. I told you that last night, what were you drunk?"

3. Rule 7 provides in part:
"A bill of particulars may be amended at any time subject to such conditions as justice requires." *See generally* 8 Moore's Federal Practice § 7.06 [1].