UNITED STATES of America, Appellee,

v.

Earl Edward HADAWAY, Appellant.

No. 81–5065.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 3, 1982.

Decided June 10, 1982.

---

**1.** The agreement provides that the "Buyer shall be in default under this contract upon ... [d]efault or breach of any warranty, covenant or liability or in the payment of any obligation contained or referred to herein."

**216**

Joseph F. Murphy, Jr., Towson, Md.
(White & Murphy, Towson, Md., on brief),
for appellant.

Barbara S. Sale, Asst. U. S. Atty., Baltimore, Md. (J. Frederick Motz, U. S. Atty.,
Baltimore, Md., on brief), for appellee.

Before WINTER, Chief Judge and WIDENER and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

Earl Edward Hadaway appeals from a conviction of aiding and abetting in the theft of televisions from interstate shipment, pursuant to 18 U.S.C. §§ 2 and 659. His sole contention on appeal is that the court abused its discretion in admitting evidence of other crimes introduced by the prosecution during its case in chief.

The government's evidence showed that, in late November, 1977, a trailer containing Hitachi color television sets consigned to Luskin's departed from New Jersey en route to Baltimore. On arrival, it was left for several days at the Boss-Linco Trucking Company in Baltimore.

On the evening of December 2, 1977, Ronald Riley, a night truck dispatcher at Boss-Linco, was visited there by his half-brother, William Holbrook, a truck driver. Holbrook asked Riley what one of the trailers near the dispatcher's office contained, and was told there were televisions in it. Holbrook left Boss-Linco, and after telephoning Hadaway and learning he was not at home, went with Leonard Riley, another half-brother, to meet Hadaway at a tavern called "Sully's."

Holbrook told Hadaway that he could "get some televisions," but needed a truck. Hadaway responded that he would be at the Colt football game in Miami for the weekend, but that he knew someone who could help. He then introduced Holbrook to co-defendant James Anthony Sullivan, who provided Holbrook with a truck. There was testimony that it was Hadaway who gave Holbrook the keys to the truck.

Holbrook and Leonard Riley picked up two friends and drove the truck to Boss-Linco. Holbrook moved the trailer with the television sets to the rear of the building and, with the help of the others, transferred about forty-eight sets from the trailer to the truck. He then returned the trailer to its original location, dropped off the two helpers, and, together with Leonard Riley, returned to Sully's at around 2:00 a. m.

The testimony is conflicting as to the ensuing events. It is clear that the two men left Sully's in the truck and followed a car to the country, where they dropped the truck off at Sullivan's house. They then were driven back to the city. Holbrook testified that it was Sullivan they followed, and Sullivan who drove them back; Riley testified that it was Hadaway. A few days later, Sullivan paid Holbrook approximately $4,800 for the television sets.

A patron at Sully's, William Persall, testified that he saw Sullivan and Hadaway together that evening "counting large sums of money out on the table." Later he saw Sullivan, Hadaway, Holbrook and another individual retire to a back room. During the next day or two, Persall sold several televisions on consignment from Sullivan. The following Monday, Sullivan told Persall that he needed the money for the televisions in order to pay Hadaway.

During the testimony of Ronald Riley, the government attempted to inquire about other crimes allegedly committed by Hadaway. After hearing counsel, the district court held that testimony about other crimes should not yet be elicited, and stated that a ruling on the admissibility of the evidence would be made after development of the facts. After all the government witnesses had testified, but before the government rested, the court held that the evidence of other crimes was admissible.

The government recalled Holbrook, Astor, and Leonard Riley. Their testimony described three subsequent instances of similar conduct. In May, 1979, Holbrook, Riley and others stole about 1,000 cases of tuna fish from a warehouse and called Hadaway in the middle of the night after completing the burglary. Hadaway, according to their testimony, told Holbrook to call back the next morning, and at that time he met them on Maryland Route 100, and led them to a friend's home, where they unloaded the goods in his presence.

In August, 1979, Holbrook testified, he stole a tractor trailer loaded with Goodyear tires. As before, he phoned Hadaway right away, met him on Maryland Route 100, and unloaded the tires at the friend's house.

In October, 1978, Holbrook and others stole a trailer containing pipe tobacco and women's boots. Hadaway came to the location where the goods were stored, looked at them, and declined to dispose of them.

Appellant Hadaway presented no evidence, and the jury returned a guilty verdict. He was sentenced to eighteen months imprisonment. He contends on appeal that the trial court erred in admitting the evidence of his other crimes.

■ The language we are called on to construe appears in Fed.R.Evid. 404(b):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In determining whether evidence is admissible under the rule, the district court must balance its probative value, defined as its relevance, necessity, and reliability, against the prejudice to the defendant of admitting the evidence. *United States v. DiZenzo*, 500 F.2d 263, 266 (4th Cir. 1974). The decision is committed to the district court's discretion, and will be reversed only if the discretion is abused. *United States v. Masters*, 622 F.2d 83, 87 (4th Cir. 1980); *United States v. Mastrototaro*, 455 F.2d 802, 803 (4th Cir. 1972), *cert. denied*, 406 U.S. 967, 92 S.Ct. 2411, 32 L.Ed.2d 666 (1972).

■ The government contended, and the district court found, that the evidence was admissible to show *intent and knowledge.* Hadaway argues that the probative value of the evidence was outweighed by its prejudicial impact, particularly since the evidence was admitted as part of the prosecution's case in chief.

Given the wide discretion permitted the district judge, it is fruitless to contend that the evidence was improperly admitted. The relevance of the crimes is indisputable. In order to convict, the government had to show that appellant *knew* that he was aiding the commission of a crime. Some of the evidence was consistent with Hadaway's contention that he simply procured a truck for some friends, without knowing of its intended use. The subsequent crimes, each involving a similar *modus operandi,* were relevant in that they made it significantly more probable that he knowingly aided and abetted the commission of the crime charged, and was not merely an unwitting gull of associates. *Cf. United States v. DiZenzo, supra* (evidence of prior sales of counterfeit United States obligations relevant to show knowledge in prosecution for sale of counterfeit obligations); *United States v. Mastrototaro, supra* (evidence of gambling and loansharking activities relevant to show a defendant's knowledge that money he provided was to be used as a downpayment for the purchase of stolen bills).

Hadaway challenges the relevance of the conduct because it occurred approximately *eighteen months after* the crime charged. Nevertheless, subsequent conduct may be highly probative of prior intent. That one has thought in a particular illegal way over a period of time is evidence that one's thought patterns had already been so developed and were so operating on another previous occasion. *United States v. DiZenzo, supra*, 500 F.2d at 265 ("it is immaterial whether the instances are found occurring before or after the act charged."). The

period of time was not so excessive as to require a conclusion of irrelevance, particularly in view of the similarity of the crimes. The impact of the time differential is within the district court's discretion, *United States v. McDonald*, 576 F.2d 1350, 1356–57 n.10 (9th Cir. 1978), *cert. denied*, 439 U.S. 830, 99 S.Ct. 105, 58 L.Ed.2d 124 (1978), and there was no abuse here.

■ The reliability of the evidence is also sufficient. While the witnesses had undertaken by plea agreements to cooperate with the government, at least two different persons testified to each of the three other crimes. Furthermore, while a defendant is always at liberty to cast aspersions on the testimony of a plea bargainer as unfairly favoring the government to provide a *quid pro quo* for the bargain, there is the countervailing consideration that self-exposure to a perjury charge is unlikely. The plea bargainer's position frequently makes him extremely reluctant to commit another crime or crimes and thus lay himself open to greater punishment.

■ The necessity of the evidence is the point most seriously contested. Hadaway asserts that, independently of the evidence of other crimes, there was substantial evidence of his intent, and at the stage of the case when the evidence was introduced—during the prosecution's case-in-chief—there was no evidence disputing his intent. He relies heavily on Judge Soboleff's dissent in *United States v. Baldivid*, 465 F.2d 1277 (4th Cir. 1972), *cert. denied*, 409 U.S. 1047, 93 S.Ct. 519, 34 L.Ed.2d 499 (1972).

As the district judge noted, there is no requirement in Rule 404(b) delineating the proper time for the introduction of evidence of other crimes. The procedure adopted by the district judge was eminently reasonable. He declined to admit the evidence after the testimony of only a few witnesses, and stated that the issue

> would properly await the development of the facts of the transactions involved in this case, because I don't think that I can make an intelligent relevancy determination until I hear the outline of the transaction involved in the present case.

The mere fact that the defendant had not yet introduced evidence when the judge finally ruled on the point does not necessarily mean that intent was uncontested or clearly established. *Cf. United States v. Williams*, 577 F.2d 188, 191 (2d Cir. 1978), *cert. denied*, 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978) (evidence of prior crimes admitted to show intent although the defendant presented no evidence).

Reviewing the other evidence presented demonstrates that the other crimes evidence was reasonably necessary. Hadaway had clearly procured the truck, but that could have been innocent. According to Leonard Riley, appellant led Riley and Holbrook to Sullivan's house and drove them back, but, if the jury believed Holbrook, who testified otherwise, Hadaway took no part in that phase of the crime. He engaged in an exchange of money with Sullivan that evening, but the possibility that it had been an innocent transaction was not ruled out. Indeed, Hadaway's counsel made precisely that point in his opening argument when he stated:

> [T]he Government has to prove, as the Prosecutor pointed out—that Mr. Hadaway has to know that the goods were stolen. . . .
>
> . . . .
>
> There is nothing that will show that Mr. Hadaway did anything improper in any way, shape or form. He didn't facilitate anything. He didn't make any deals and the fact that he, according to their testimony was at a bar certainly wouldn't make a case, even if you believed he was at the bar.

We do not intend to be understood as suggesting that opening argument by defense counsel, on its own, necessarily affords a basis for invoking Fed.R.Evid. 404(b). That is not the present case. The evidence presented to the jury was what generated uncertainty about knowledge and intent, making resort to the other crimes evidence appropriate. The opening statement by defense counsel is referred to only to provide reinforcement for the conclusion

that the evidence not only would, but, in fact, did, generate uncertainty, making necessary the evidence of other crimes.

Appellant's contentions based on Judge Sobeloff's dissent in *United States v. Baldivid supra*, are unpersuasive. Judge Sobeloff's point was that Baldivid contested his commission of the acts which constituted the crime. If he was believed, he would be acquitted, and if not, he would be convicted. The contested issue was not intent, and the evidence of other crimes could have had no effect other than to persuade the jury Baldivid was a "bad" person. 465 F.2d at 1286–87. Furthermore, of course, the majority in *Baldivid* held the evidence admissible.

One final point should be made regarding necessity, as it relates to introduction of the evidence as part of the government's case-in-chief. The risk of permitting evidence to come in as part of the prosecution's case is that it might be followed by additional evidence which would establish intent beyond a reasonable doubt. In such a case, if other elements of the crime were in doubt, admission of the evidence of other crimes might in the end prove not only quite unnecessary but highly prejudicial as well. That case is not presented here, however. The government was required to delay presentation of the other crimes evidence until the end of its case. Hadaway offered no evidence. Hence for the government it was a case of now or never.

██ Finally, since the evidence was relevant, reliable, and necessary, it remains to determine whether those factors were outweighed by the prejudicial impact of the evidence.[1] The evidence was prejudicial in the sense that it increased the likelihood of conviction, but it did not create the impression that appellant was an ogre who should be sent to jail, guilty or not. Any such impact of the evidence was largely dissipated by the court's repeated instructions to the jury to consider the evidence only as relevant to intent, knowledge, motive, plan

and preparation with regard to the charged crime. In his closing instructions the district judge explicitly stated:

> Evidence as to another offense of a like nature may not, therefore, be considered by the jury in determining whether the accused did the act charged in the indictment, nor may such evidence be considered for any other purpose whatever, unless the jury first finds that other evidence in the case standing alone establishes beyond a reasonable doubt that the accused did the act charged in the indictment. If the jury should find beyond a reasonable doubt from other evidence in the case that the Defendant did the act charged in the indictment, then the jury may consider evidence as to an alleged similar offense in determining the state of mind or intent with which the accused did the act in the indictment, and where all the elements of an alleged similar offense are established by evidence which is clear and conclusive, the jury may, but is not obliged to, draw the inference and find that in doing the act charged in the indictment, the Defendant acted wilfully and with specific intent and not because of mistake or accident or other innocent reason.

*Cf. United States v. DiZenzo, supra* (limiting instruction decreases risk of prejudice); *United States v. Williams, supra.* The prejudicial effect of the evidence of other crimes, if there was any, was outweighed by its probative value, and the district court accordingly did not abuse its discretion.

AFFIRMED.

WIDENER, Circuit Judge, dissenting:

I respectfully dissent.

This case is another example of what I believe to be a disturbing trend in this circuit to admit evidence of a criminal defendant's similar bad acts, notwithstanding the general prohibition against admission of such evidence. *See* my dissent in *United*

---

1. Fed.R.Evid. 403:
   "Although relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...."

*States v. Woods*, 484 F.2d 127, 140 (4th Cir. 1973), *cert. denied*, 415 U.S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 875 (1974). The existence of this trend is best illustrated by this court's opinion in *United States v. DiZenzo*, 500 F.2d 263, 265 (4th Cir. 1974), where it was said:

> Indeed, evidence of similar acts is relevant to so wide and unclassifiable a range of issues that the exclusionary rule has become one of qualified admissibility, aptly phrased: "Evidence of other offenses may be received if relevant for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime." *United States v. Stirone*, 262 F.2d 571, 576 (3d Cir. 1959), reversed on other grounds, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).·

*DiZenzo* should be compared for contrast with *Lovely v. United States*, 169 F.2d 386 (4th Cir. 1948). In the instant case, evidence of the defendant's involvement in other similar operations was allowed on the theory that it was necessary to show his intent. I believe the evidence showed nothing more than propensity to commit this type of crime.

The trend to admit similar acts evidence runs directly counter to the philosophy expressed by the Supreme Court, which has said:

> Courts which follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt.... The State may not show defendant's prior trouble with the law, specific criminal acts, or ill fame among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

*Michelson v. United States*, 335 U.S. 469, 475–76, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948).

As the majority notes, admission of similar acts evidence under Federal Rule of Evidence 404(b) involves considerations of probative value as well as the possible prejudicial effect of the evidence. (At 217). It is important to emphasize, however, that probativeness goes beyond the usual questions of relevance and reliability and includes the question as to whether the situation is one meeting the language of Rule 404(b). *See* 2 *Weinstein's Evidence* ¶ 404[08] (1981). Here, the court below and the majority both found that the proffered evidence met the motive and intent exceptions of Rule 404(b). I disagree.

At trial, the prosecution witnesses variously testified that the defendant was told that stolen televisions were available, that the defendant supplied the keys for a truck used to transport the televisions, that the defendant gave money to those who stole the televisions, and that the defendant directed where the stolen merchandise was to be taken. Nevertheless, the prosecution asserted that this testimony was insufficient to establish that the defendant was a knowing participant in criminal activities, and that it was therefore necessary to introduce testimony concerning the defendant's participation in other fencing operations in order to establish his intent in this one. Such an assertion is little more than pretextual and I think is nothing less than a prejudicial example of overkill.

The prosecution even had no need to introduce the testimony in question. Not only was there ample evidence of criminal intent from the testimony concerning the defendant's actions in this incident, but the defense had not seriously challenged the intent issue at the time the evidence was introduced. Significantly, the evidence was

introduced as part of the prosecution's case-in-chief, and not on rebuttal. While the defendant's opening statement did discuss the idea that the defendant's activities were not criminal, the majority admits that such a statement does not alone open the door to admitting similar acts evidence. The majority has reasoned, nevertheless, that the defendant's activities in this case, considered individually and out of context, could have legitimate explanations and thus it was necessary to allow the introduction of the similar acts testimony to prove intent. (At 218–219). I think that this is post hoc rationalization and creates such a broad exception to the general rule against similar acts evidence that it threatens to swallow the rule.

Even if otherwise admissible, the evidence was so prejudicial as to make it inadmissible under Rule 403. The proffered testimony concerned the defendant's involvement in three substantially similar incidents. The majority has argued that the risk of prejudice was reduced by the trial judge's repeated instructions to the jury concerning the proper use of such evidence. While such instructions are necessary when admitting this type of testimony, the great emphasis on the testimony could just as well have the effect of reinforcing its content in the minds of the jurors.

For the foregoing reasons, I believe that the district court erred in admitting the testimony concerning the defendant's ostensible involvement in other similar operations for which he has not even been charged, much less convicted.

I would grant a new trial.