Milton Rawley DIAL, Jr., and Vickie Dial, Plaintiffs-Appellants,

v.

The TRAVELERS INDEMNITY COMPANY, Defendant-Appellee.

No. 85–4260
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 16, 1986.

C. Everette Boutwell, Laurel, Miss., for plaintiffs-appellants.

Watkins & Eager, Richard T. Lawrence, Jackson, Miss., for defendant-appellee.

Before POLITZ, GARWOOD and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This case is an appeal of a jury verdict for the defendant insurance company, rejecting the insureds' policy claim based on the fire-loss of their house and contents. The issues raised by the insureds, Milton Rawley Dial, Jr., and Vickie Dial, are whether the district court abused its discretion when it admitted evidence of fires that occurred after the fire that destroyed their house; whether the district court erred in failing to direct a verdict for the plaintiff or grant a judgment notwithstanding the verdict; whether the district court erred when it refused to submit the issues of punitive damages, interest, and attorney's fees to the jury; and whether the district court erred in numerous evidentiary rulings. We affirm.

I

On review of a district court's denial of a motion for judgment notwithstanding the verdict, we review the evidence in the light most favorable to the motion's opponent. *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969). Despite the fact that this case arises from diversity jurisdiction, we employ a federal standard to assess the sufficiency of the evidence. *Planters Manufacturing Co. v. Protection Mutual Insurance Co.*, 380 F.2d 869, 871 (5th Cir. 1967).

The insureds' family lived in the house in question, an almost-completed underground structure that had turned out poorly, perhaps because Milton Dial, Jr. and his father, Milton Dial, Sr., had designed and built the structure themselves. The house was already leaking, and a structural engineer testified at trial that the house would have collapsed if the house were covered with dirt on top and back-filled on three sides as the design called for.

The Dials faced some financial difficulties. The family oilfield company had gone out of business in 1982. Dial, Jr., faced an unsatisfied $1,400 judgment. The bank had written off a check on his bank account as uncollectible. The Dials did have some resources, however, since Dial, Jr. was receiving workmen's compensation at the time of the fire from his oilfield job, and Vickie Dial was working.

The Dial family behaved curiously on the night of the fire. The children slept on the floor at the foot of their parents' bed, which was usual, according to Vickie Dial, but the children had their own bedroom, furnished with their own clothes and furniture. Dial, Jr. and his guest, Alan Roberts, cleaned guns near the open fireplace, using Marvel Mystery Oil, a flammable cleaning and lubricating fluid. The first fire was discovered about three o'clock in the morning and was said to be located near the

fireplace. Firemen were summoned, and all the witnesses thought that the fire had been extinguished when the firemen left. The effort to put out the fire resulted in about two inches of water in the house, and apparently the Dials left to spend the night elsewhere. Nevertheless, at about 5 a.m., either Dial, Jr. or his father returned to the house, and discovered a second fire. The fire department was again called, and again all concerned were satisfied that the fire was out when they left. The third fire occurred around noon and the house was finally destroyed. Members of the Dial family reentered the house before each of the later flare-ups.

The Dials sued in Mississippi state court for the loss of their residence and loss of its use under their insurance policy with Travelers and for punitive damages for bad faith refusal to pay the claim. Travelers removed the case to federal district court.

At trial, the Dials made out a prima facie case on their insurance claim. The Travelers Indemnity Company (Travelers) defended by asserting that the fire was intentionally set and that that fact was concealed, so that they had no obligation to pay the claim.

Midway through the presentation of Travelers' case, the district court ruled on one of the Dials' pretrial motions that had sought to exclude any evidence relating to other fires with which the Dial family had been associated. In addition to the fire that is the subject of this case, the Dials had been burned out of their previous home, and after the fire in this case, two properties belonging to Dial, Sr., but occupied by the insureds at the time of the fire, burned. After earlier reserving its ruling on the issue, the district court ruled that the evidence of other fires was admissible for the limited purpose of showing motive, intent, plan, or knowledge. Fed.R.Evid. 404(b). The district court therefore allowed evidence on a fire that burned Milton Dial, Sr.'s insured mobile home on November 22, 1983, and a fire that burned a house belonging to Milton Dial, Sr. on December 9, 1983.

The case was tried to a jury. At the close of all the evidence, the district court rejected the Dials' requested jury instructions on the issues of punitive damages, interest, and attorney's fees. The jury returned a verdict for Travelers, and the trial judge denied the Dials' motions for a new trial and judgment notwithstanding the verdict.

## II

The Dials contest several rulings of the district court. The Dials argue that the district court should not have admitted evidence of other fires, that the district court should have granted their motion for a directed verdict, or, alternatively, that the district court should have found that the jury's verdict was not supported by the weight of the evidence, that the district court should have submitted the issues of punitive damages, interest and attorney's fees to the jury, and that the district court allowed too great a scope for the testimony of Travelers' expert witnesses while overly restricting their witnesses.

Travelers responds that the subsequent occurrences can be used to show a plan, motive, intent, opportunity, preparation, knowledge, identity, or absence of mistake or accident under Fed.R.Evid. 404(b). Travelers also argues that sufficient evidence existed to send the case to the jury and to support the jury's verdict. Travelers also contends that the issues of punitive damages, interest, and attorney's fees could not be submitted to the jury without some evidence of bad faith in failing to pay the claim, and that the jury could not have awarded punitive damages in any event because it found for the appellee. Travelers also argues that there were no errors in the court's rulings as to the proper scope of witnesses' testimony.

## III

### A.

The Dials raise one important issue, which is whether the evidence of the subsequent fires should have been admitted to

show a plan, etc. The other points on appeal require little discussion. We therefore devote our primary attention to the admission of evidence of the subsequent fires.

Rule 404(b) of the Federal Rules of Evidence, which is the evidentiary standard even for civil diversity cases, *Garcia v. Aetna Casualty and Surety Co.*, 657 F.2d 652 (5th Cir.1981), states:

> Evidence of other crimes, wrongs, or acts, is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ Fifth Circuit case law breaks into three steps the determination of whether evidence of other crimes, wrongs, or acts are admissible. *United States v. Beechum*, 582 F.2d 898, 911–13 (5th Cir.1978). "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of Rule 403." *Id.* at 911. Third, "the line of reasoning that deems an extrinsic offense relevant to the issue of intent is valid only if an offense was in fact committed and the defendant in fact committed it. Therefore, as a predicate to a determination that the extrinsic offense is relevant, the [proponent] must offer proof demonstrating that the [opponent of the evidence] committed the offense." *Id.* at 912–13.

The district court considered, very carefully and analytically, all of the *Beechum* factors. It first noted the predicate evidence that indicated that the appellant had committed the extrinsic act, relying on the testimony that Travelers said would be, and in fact was, elicited regarding those extrinsic acts. Travelers offered proof that the subsequent fires were intentionally set on insured properties and that Dial,

Jr. had both motive and opportunity to set the fires. Travelers made good on these offers of proof using the testimony of a deputy state fire marshal who had investigated the subsequent fires, and other witnesses.

The standard that the district court must apply to determine whether the predicate extrinsic act has been shown is found in Fed.R.Evid. 104(b): "The preliminary fact can be decided by the judge against the proponent only where the jury could not reasonably find the preliminary fact to exist." *Beechum*, 582 F.2d at 913. The evidence supplied by Travelers easily satisfied this standard.

■ The district court then determined that the evidence of the other fires would be relevant to the insureds' motive or intent. In a case where intent is so relevant as in a fire claim met by a defense of arson and concealment and where the essential issue is the difference between an accident and an intended act, evidence of similar wrong conduct is especially relevant to probe the questions of intent and a plan to burn insured properties. In this case, the subsequent fires occurred shortly after the fire at issue, a significant factor that helps establish relevance. *United States v. Lemaire*, 712 F.2d 944 (5th Cir.1983). As in the fire at issue, the properties that burned were both insured, and experts testified that the fires were intentionally set. Dial, Jr. was present at all three fires.

The Dials argue that the evidence of the two extrinsic fires is irrelevant because they occurred after the subject fire. This argument fails because "intent may be inferred from subsequent as well as prior acts." *United States v. DiZenzo*, 500 F.2d 263, 265 (4th Cir.1974). *See also United States v. Hadaway*, 681 F.2d 214 (4th Cir. 1982).

The Dials further contend that the evidence of the later fires was irrelevant because the properties in question were owned by Dial, Jr.'s father, not by the Dials. The Dials contend that because they received none of the insurance recov-

ery for those fires, they indicate nothing about his intent, motive, or a common plan at the time of the fire in question. The objection ignores much of the evidentiary background before the court: the close personal and business relationship that Dial, Jr. and his father shared included partnership in an oil business, furnishing labor and materials for each other's houses, and sometimes sharing quarters. Indeed, at the time of the two later fires, Dial, Jr. was occupying each of the premises destroyed. Under these circumstances, it is clear that evidence showing that Dial, Jr. set other fires on his father's insured properties that he was occupying could easily indicate intent and a common plan to burn his own insured house. The district court did not abuse its discretion when it found the later fires were relevant.

Finally, the district court undertook a searching analysis as to whether the probative value of evidence of the subsequent fires would exceed their prejudicial impact, and determined that the short time between the fire in question and the later fires, the appellants' opportunities to participate in setting the fires, and the insurance coverage in the cases indicated that the probative value of the evidence would not be substantially outweighed by their prejudicial impact.* The district court limited any potential prejudice by instructing the jury to consider the evidence of the later fires only to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The weighing of the probative value of the evidence against its prejudicial impact is committed to the sound discretion of the district court, *Beechum*, 582 F.2d at 915, and the district court did not abuse its discretion here in weighing probative value against prejudice.

**B.**

▮ The Dials also contend that the district court unfairly prejudiced them when it reserved its ruling on the admissibility of the later fires until midway through the trial. They argue that because they had assumed that evidence of the other fires would not come before the jury, they were prevented from raising the issue themselves, thereby defusing the impact of the evidence. The Dials, however, could not have been surprised by the evidence because they were fully informed through pretrial materials of the nature of the evidence and that Travelers would seek to present it. Moreover, the district court properly withheld its ruling until it was more certain that Travelers could provide sufficient nexus between the subsequent fires and Dial, Jr. In any event, the district court instructed the jury not to presume that the Dials would not have disclosed evidence of the other fires from the fact that the Dials did not raise the issue in the presentation of their case. This instruction was sufficient to negate any prejudice.

As already noted, the trial court's ruling on the admissibility of the evidence as to the two subsequent fires could be overturned only for an abuse of discretion. None of the points that the Dials raise shows any abuse of discretion, and, in fact, the district court appears to have ruled on the question with far more circumspection than might be required.

**C.**

The Dials contend that the issues of punitive damages, interest, and attorney's fees should have been submitted to the jury because, they contend, the insurance company in bad faith denied payment of their claim. The argument is frivolous, especially in the light of our earlier holdings in this opinion. Under Mississippi law puni-

---

* The district court also noted that, because the Dials had sought punitive damages, Travelers' purported bad faith was an issue in the case. The evidence that supplied a factual or legal basis for Travelers' refusal to pay the claim was relevant, therefore, because punitive damages for refusal to pay an insurance claim can be awarded in Mississippi only when there is no reasonably arguable basis in fact or law to deny the claim. *Blue Cross & Blue Shield of Mississippi, Inc. v. Campbell,* 466 So.2d 833, 844 (Miss. 1984).

tive damages should be submitted to a jury *only* when the insurance company has no "reasonably arguable basis, either in fact or in law, to refuse to pay the claim." *Blue Cross & Blue Shield of Mississippi, Inc.,* 466 So.2d at 844. The evidence here fully supports the jury verdict that Travelers was not obligated to pay the Dials anything under the terms of the policy; stated another way, the jury held that there was more than a "reasonably arguble basis" not to pay the claim—there was a conclusive basis for not paying the claim. This verdict is fully consistent with the evidence and proof before the district court at the time it refused the Dials' request to submit to the jury the issues of punitive damages, interest, and attorney's fees. The plaintiff has a heavy burden to demonstrate that there was no reasonably arguable basis for the insurance company's denying the claim. *Id.* The Dials failed to carry that burden, even the first step of the way, and there was therefore no basis to submit the question to the jury. *Reserve Life Insurance v. McGee,* 444 So.2d 803 (Miss.1983).

### D.

The Dials also argue that Travelers' experts' testimony was improperly admitted. Travelers answered the Dials' interrogatories by disclaiming personal knowledge of the facts stated in the answers; however, the answers acknowledged that the persons who provided the facts had stated them to be true. The law requires no more than this. *Wilson v. Volkswagen of America, Inc.,* 561 F.2d 494 (4th Cir.1977); Fed.R. Civ.P. 33.

Finally, the Dials challenge almost every witness individually on various and sundry, often inconsistent or fallacious, grounds. We have reviewed each of these challenges and find no merit to any of them.

### E.

The Dials also contend that the district court should have granted them a directed verdict, or failing that, granted their motion for a judgment notwithstanding the

verdict or a new trial. We can deal with the contention briefly: the verdict, as evident from the foregoing opinion, was so fully supported by competent evidence that any such relief requested by the Dials would have been inappropriate.

### IV

Because the district court did not abuse its discretion when it admitted the evidence of the subsequent fires, and because it committed no other errors, the judgment of the district court is therefore

AFFIRMED.