53 F.3d 329
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Kim Milburn DOUGLAS, Defendant-Appellant.
 No. 93-5877.
 United States Court of Appeals, Fourth Circuit.
 Argued: February 2, 1995.
Decided: May 9, 1995.
 
 ARGUED: Karl Clinton Wehr, Annapolis, MD, for Appellant. Andrea L. Smith, Assistant United States Attorney, Office of the United States Attorney, Baltimore, MD, for Appellee. ON BRIEF: Lynne A. Battaglia, United States Attorney, Office of the United States Attorney, Baltimore, MD, for Appellee.
 Before WIDENER and HAMILTON, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 The defendant, Kim Milburn Douglas, appeals his conviction of conspiracy to distribute and possess with intent to distribute cocaine and heroin, in violation of 21 U.S.C. Sec. 846, on the sole ground that the evidence was insufficient to support the verdict. We affirm.
 
 
 2
 * Douglas was indicted for aiding and abetting and conspiring with certain other persons, including Alveda Ingram (a/k/a Alveda Richardson), Alvin Stewart, Walter Ingram (Alveda's brother), Adoram Harshefi, and Michelle Harshefi (Adoram's wife), in violation of 21 U.S.C. Sec. 846. Douglas's trial was severed from co-defendant Alveda Ingram, and the jury returned a verdict of guilty on June 7, 1993.
 
 
 3
 At trial, DEA Special Agent Kula was qualified as an expert in the field of narcotics law enforcement and described for the jury various wire taps and interceptions of telephone conversations obtained pursuant to the DEA investigation.
 
 
 4
 Among the items of evidence introduced, much of it circumstantial, with varying degrees of relevancy, were the following. Kula identified Harshefi as a big-time drug dealer, and the record showed Ingram was at or near that level in Baltimore. As evidence of the existence of the alleged conspiracy, the government introduced through Kula certain tapes of telephone conversations between Ingram and the defendant, Douglas. Kula testified that Douglas called Ingram's home on November 19, 1991, from the Baltimore City Detention Center where Douglas was then incarcerated. Ingram was not at home, but the person answering the telephone connected Douglas by conference call to the home of Ingram's mother, where Douglas was successful in speaking with Ingram. The conversation revealed that at Douglas's direction, Ingram attempted to contact Adoram Harshefi, again by conference call from Ingram's end, with Douglas providing the telephone number of the Holiday Inn in Calverton and the room number in which Harshefi was staying. The conference call to that room resulted in a three-way conversation between Ingram, Douglas, and Michelle Harshefi. Michelle Harshefi related that Adoram Harshefi was out on an errand and Douglas told Michelle Harshefi to tell Adoram "that Kim said he gonna have Alveda call him." Ingram ended the conference call with Michelle Harshefi and continued the conference call with Douglas, at which time Douglas supplied Ingram with Adoram Harshefi's Skytel paging number, his own identification code, 95, so that Harshefi would recognize Douglas as the person paging him, and the paging identification code of 66 belonging to Harshefi's "partner." During this same conversation, Douglas told Ingram about the difficulty of reaching Harshefi while incarcerated, and how Harshefi had visited a friend in the detention center the day before, but that he (Douglas) was upstairs in Reverend Martin's office when he found out Harshefi was coming there, and that "I didn't get a chance to give, you know what I mean, tell him, tell his friend what exactly what I wanted him to do." Douglas then indicated that he was hoping to put Ingram in direct contact with Harshefi. Douglas related to Ingram about Harshefi's fear of being in Baltimore because of recent problems at the downtown Marriott, with Ingram responding that she would "go out" to meet Harshefi so that he would not have to come into the city. Douglas told Ingram to tell Harshefi that "there ain't no way I can call him because I ain't, you know what I mean, I need a 3 way and all that stuff and I been trying to catch him all morning and I'm gonna call him as soon as I can, again later on today.... But to tell him it's alright for you all to talk or you, or you wouldn't had the number. You know what I mean, don't let him run you around tell him it's alright for you all to talk but you wouldn't have the number man." Kula testified that the 3-way conversation with Michelle Harshefi indicated that Michelle Harshefi knew Douglas. In follow-up of Douglas's comment to Ingram that Harshefi was afraid to come into the city, Kula found through a computer check that Adoram Harshefi had been arrested on drug charges in downtown Baltimore in October 1991, with prosecution pending.
 
 
 5
 Kula testified that the significance of the code or PIN number of 95 used by Douglas when paging Harshefi was that Harshefi would recognize the caller as Douglas if the code number 95 was added to the number. Kula testified that in other contacts with Harshefi, Douglas used both the code numbers of 95 and 66, and that Douglas's reference to Harshefi's partner as code 66 was a reference to an individual that Harshefi had been arrested with in October 1991.
 
 
 6
 The government then introduced two telephone conversations between Harshefi and Ingram, in which Harshefi indicated he had talked with Douglas, and arranged to meet Ingram at the McDonald's restaurant at Exit B in Calverton shortly after the conversation. These contacts between Ingram and Douglas and Harshefi prompted the ensuing DEA surveillance of Harshefi that terminated in Harshefi's arrest on January 14, 1992, in his hotel room while he was attempting to flush more than one hundred grams of heroin down the toilet. Other evidence confiscated during the arrest included more heroin, more than $44,000.00 in cash, assorted paperwork, and Harshefi's pager. As noted, Kula testified that Harshefi was classified as a bigtime drug dealer, who in his normal business dealt with other dealers, and in general did not deal directly with users.
 
 
 7
 As further evidence of Douglas's involvement in Harshefi's drug business, the government introduced Skytel records of calls to Harshefi's pager which showed that Harshefi was paged from the Chaplain's Office at the Baltimore City Jail on December 7th, 1991 by someone using the code number 95. Then on January 13, 1992, the day before Harshefi was arrested, there were three calls to Harshefi's pager from a number followed by Douglas's code number 95. Another conversation between Douglas and Ingram intercepted on January 25, 1992 was introduced in which Douglas informed Ingram of the arrest of their "friend" that Ingram "saw that time. "
 
 
 8
 In addition to the above, the government introduced several tapes to show Ingram's drug-trafficking activities and the nature of the relationship between Ingram and Douglas. This evidence included intercepted conversations between Alveda Ingram and seven persons other than Douglas which occurred during the time of the alleged conspiracy. Kula described for the jury various code and slang terms and characteristics of conversations regarding illegal drug trafficking. He testified regarding particular interceptions, including one conversation on January 11, 1992 between Ingram and a person identified as A. Williams in Louisiana, in which Williams indicated to Ingram that he was getting two kilograms of cocaine, one kilogram of which was being fronted to him without payment, and that he would provide one of these kilograms to Ingram. Kula testified that in another conversation with the same Williams on January 18, Ingram indicated that an unknown person was reluctant to travel with the drugs in his car from Louisiana to Maryland.
 
 
 9
 Regarding the relationship between Ingram and Douglas, Kula testified that Douglas was intercepted speaking with Ingram from several different telephones during the course of the wire taps. In one conversation of March 20, 1992, Kula related that Ingram and Douglas were discussing the arrest on the previous day of Ingram's brother and the confiscation of Ingram's car. In that same conversation, Douglas told Ingram of his meeting with some unnamed person also known to Ingram, and about a "plan" about which both had some "you know what I mean" knowledge, with Douglas reporting to Ingram that he was going to "look it over pretty good," and that he had not been working for the right people the last 10 years. He told Ingram that "I said we sit up there and negotiate like we was talking about merging the business or something though man. So, you know what I mean?" Douglas related to Ingram that he thought it was a good idea to negotiate, to get all the details of the plan out in front. Kula testified that while specific passages taken out of context of the conversation did not raise drug-related inferences, the whole conversation taken as a whole was drug-related. In another conversation on March 22, 1922, Douglas and Ingram arranged to meet in a specified block on Presbury, between Fulton and Mount, and Douglas gave Ingram instructions on how to get there. Kula testified that it was his opinion that the reason Douglas would be in the area of the arranged meeting would be to sell drugs.*
 
 II
 
 10
 The standard of review of a challenge of sufficiency of evidence is whether, construing the evidence in the light most favorable to the government, there is substantial evidence to support the verdict. Glasser v. United States, 315 U.S. 60, 80 (1942). The only question before us is whether there is substantial evidence in the record that Douglas willingly entered into an agreement with another person, not including government agents, to commit, in concert, unlawful acts of possession and distribution of cocaine or heroin. See Pinkerton v. United States, 328 U.S. 640, 644 (1946). To support a conviction for conspiracy, "there need only be a showing that defendant knew of the conspiracy's purpose and some action indicating his participation.... These elements can be shown by circumstantial evidence such as his relationship with other members of the conspiracy, the length of this association, his attitude, conduct, and the nature of the conspiracy." United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir.1984); see United States v. Harris, 39 F.3d 1262, 1267 (4th Cir.1994) (proof may be in the form of circumstantial evidence, and may be inferred from the totality of the circumstances as shown by the government).
 
 III
 
 11
 The evidence in this case does not support Douglas's argument that it does not show more than he introduced a willing buyer to a willing seller. Douglas's essential position is that he did no more than attempt to arrange a purchase of drugs by Ingram from Harshefi:
 
 
 12
 Taking the evidence in the light most favorable to the Government, [Douglas] ... in telephone call D-1065 spoke to Alveda Ingram and Michelle Harshefi to attempt to arrange a purchase of drugs ... [Douglas] was unsuccessful in this endeavor in that he never agreed to carry out any illegal act as he never spoke to Adoram Harshefi. Adoram Harshefi called Alveda Ingram and they, without the participation, knowledge or acquiescence of ... [Douglas], consummated their own drug transaction. There was no possible evidence that either Harshefi or Alveda Ingram had agreed to share any commission or fee that might be generated from either the alleged buyer or the seller of the drugs. Further, there was no evidence that Alveda Ingram would share or loan on account any of the drugs purchased from Harshefi to[Douglas]. Such a transaction would be doubtful as[Douglas] was incarcerated at the time of the transaction and remained so for another two (2) months. Douglas Brief, p. 18.
 
 
 13
 Douglas's position is principally predicated on the long telephone conversation reproduced in his brief at pp. 3-12, which is the same conversation, No. 1065, referred to in the portion of the brief quoted just above. The conversation was initiated by Douglas while he was in jail and in which he called Ingram on the telephone, and she used her conference call feature to pull Harshefi into the conversation. Even if that call were standing alone, the conclusion Douglas seeks to draw would be doubtful, but that is not all.
 
 
 14
 As we have noted, Harshefi was a big dealer in illegal drugs and the record supports the conclusion that Ingram was a drug dealer of some considerable consequence in Baltimore. Even the brief appendix discloses at least ten telephone calls between Douglas and Ingram during the period of the conspiracy.
 
 
 15
 Not only were those calls made and intercepted, conversations of March 22, 1992 between Douglas and Ingram arranged a meeting between them while Douglas was out on the street selling drugs. A conversation between Douglas and Ingram on March 20, 1992 was with reference to a source of drugs and Douglas's discussion of his "business arrangement" and "merging the business" of his drug dealing.
 
 
 16
 Douglas's connection with Harshefi aside, there is substantial evidence in the record to support the conclusion that Douglas and Ingram were guilty of conspiracy as charged in the indictment. Glasser v. United States, 315 U.S. 60 (1942). Douglas's reliance on United States v. Giunta, 925 F.2d 758 (4th Cir.1991), is not persuasive. We reversed Giunta's conviction because it was not proven that Giunta did other than assist a willing buyer of drugs to find a willing seller. That is not the case here. Ingram and Douglas conspired to distribute and possess with intent to distribute the illegal drugs as charged. Douglas was not merely, as he argues, an attempted arranger for purchase by Ingram from Harshefi. He was a conspirator with Ingram in every sense of the word.
 
 The judgment of conviction is accordingly
 
 17
 AFFIRMED.
 
 
 
 *
 Although it was not in the time period of the conspiracy alleged in the case before us, the jury heard evidence of Douglas's subsequent arrest on drug charges about a year later, on March 10, 1993, when Douglas was observed in the 2000 block of Edmondson Avenue by plain-clothes officers accepting money from a black female, following which he handed the female several items. Just prior to his arrest, Douglas dropped to the ground a glassine bag containing what was later identified as .5 grams of heroin. The female was apprehended with three glassine bags in her hand containing white powder which was later identified as heroin. This bad act was properly admitted to counter Douglas's defense that the intercepted conversations were innocent. United States v. Hadaway, 681 F.2d 214 (4th Cir.1982)