962 F.2d 8
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James E. WESTON, Defendant-Appellant.
 No. 91-5359.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 2, 1992
Decided: April 30, 1992
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. John R. Hargrove, District Judge. (CR-90-445-HAR)
 Argued: William Michael Ferris, Krause & Ferris, Annapolis, Maryland, for Appellant.
 Jane F. Barrett, Assistant United States Attorney, Baltimore, Maryland, for Appellee.
 On Brief: Richard D. Bennett, United States Attorney, Richard C. Kay, Assistant United States Attorney, Baltimore, Maryland, for Appellee.
 D.Md.
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 Before RUSSELL, Circuit Judge, BUTZNER, Senior Circuit Judge, and SIMONS, Senior United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 BUTZNER, Senior Circuit Judge:
 
 
 1
 David E. Weston, the former public works officer of the United States Naval Academy in Annapolis, Maryland, was convicted by a jury on five counts of seeking and accepting gratuities in his official position in violation of 18 U.S.C. §§ 2 and 201(c)(1)(B), one count of conspiring with others, named and unnamed, to seek and accept such gratuities in violation of 18 U.S.C. § 371, and obstruction of justice in violation 18 U.S.C. §§ 2 and 1503. Weston appeals both his conviction and his sentence. He alleges that the district court improperly admitted unduly prejudicial evidence of actions not charged in the indictment and that the court's questioning of a government witness was improper and prejudicial to his case; that evidence of his business dealings was seized under a defective search warrant; and that the acts charged in the indictment cannot support a conviction of obstruction of justice. He further alleges that the trial court improperly enhanced his sentence because the court erroneously found that Weston obstructed justice, was a leader or organizer of the conspiracy, and committed the offense while serving as a high government official. Weston also assigns error to the court's refusal to depart downward in sentencing in recognition of his previously distinguished military record. We find no abuse of discretion in the trial court's evidentiary rulings and no material defect in the search warrant. We further hold that the acts proved at trial were sufficient to support Weston's conviction of obstruction of justice. Accordingly, we affirm his conviction. However, because the trial court improperly applied the Guidelines, we vacate the sentence and remand for resentencing. Because a trial court's refusal to grant a downward departure is not reviewable on appeal, we do not consider Weston's argument that the court erred in refusing to depart downward.
 
 
 2
 * In July of 1985, Weston, a career Naval officer, was assigned to duty as the public works officer of the Naval Academy. As such, he supervised all new construction and all the buildings and ground maintenance at the Academy and further, as officer in charge of construction, had responsibility for awarding contracts for buildings and repairs to the Academy grounds. Weston held a "warrant" from the Navy to enter into contracts for work on his own authority for amounts up to one million dollars.
 
 
 3
 Testimony at trial showed that Weston, soon after his assignment to the Academy, began a pattern of permitting his subordinate Eugene Hook, the director of construction, to solicit gifts to Weston from Carroll Dunton, a contractor with extensive business contacts with the Academy. On various occasions, Dunton purchased and gave to Weston a washer and dryer, a total of five window-unit air conditioners, some riding lawn mowers, a trash compactor, and a dishwasher. These items were for Weston's personal use at his service-provided housing on the grounds of the Academy. Weston did not repay Dunton for the cost of the items. In addition, Dunton on one occasion paid for Weston's use of a rental car and permitted Weston to park his recreational vehicle at Dunton's business premises for a long period and to use electricity and gasoline from the premises for the vehicle without making repayment. Weston named Dunton to the list of "preferred bidders" for certain Navy contracts not advertised to the public and awarded Dunton several lucrative contracts for work at the Academy, on one occasion making such an award even though Dunton's bid was 50 percent over budget after Dunton passed to him through Hook the word that "all is forgiven."
 
 
 4
 The testimony further established that in late 1987 Weston and his wife became distributors for the Amway line of products and that Weston actively recruited Dunton to purchase Amway products. Dunton did so repeatedly, even though testimony established that he had no use for some of the products and did not receive others.
 
 
 5
 In June 1989, Weston retired from the Navy and moved to Nevada. The next year, a federal grand jury issued a subpoena to Weston and his wife, demanding that they furnish all records relating to their Amway business. In response, the Westons tendered a set of documents that included receipt books from which numbered receipts had been torn out, even though attached adding machine tapes suggested that those receipts had represented records of transactions. Agents of the Federal Bureau of Investigation requested that Weston furnish any additional records in his possession. Weston turned over a few more documents, stating that he had no more in his possession. The FBI then executed a search warrant at the Westons' home, which produced the missing Amway receipts and other relevant documents.
 
 
 6
 At trial, Weston argued that his dealings with Dunton represented bona fide transactions for which Dunton had been paid. On one occasion, Weston said, he paid with a check or money order which he was unable to produce. On all other occasions, he said, payment was made in cash. He further argued that he did not have the authority to influence the award of some of the contracts cited by the government.
 
 
 7
 The government produced the testimony of Hook and Dunton, the coconspirators mentioned in the indictment. Both men testified pursuant to plea agreements. The government also presented wide-ranging testimony about Weston's conduct as public works officer. Much of this testimony disclosed Weston's Amway dealings with other contractors over whom he had authority, his apparent violation of Naval regulations in his conduct of the Amway business, and Weston's apparent manipulation of the contract process to reward his friends and Amway customers. Other testimony centered on Weston's control over the contracting process for the renovations of the football locker rooms and coaches' office and the apparent resemblance between carpet ordered for that renovation and carpet later installed at the Westons' home at the Academy. In addition, witnesses testified to Weston's use of his warrant, in ways that apparently skirted applicable naval regulations, to influence architectural and engineering contracts. Weston's counsel timely objected to the introduction of much of this testimony, which concerned conduct not explicitly charged in the indictment. However, the trial court permitted the testimony either as tending to show the "manner and means" of the conspiracy charged in Count One of the indictment or under the authority of Federal Rule of Evidence 404(b).
 
 
 8
 Following the jury's verdict of guilty on all counts, the trial court sentenced Weston under the United States Sentencing Guidelines. At sentencing, the court enhanced Weston's base offense level by two levels for obstruction of justice under U.S.S.G.s 3C1.1. The court further enhanced Weston's offense level by two levels under U.S.S.G.
 
 
 9
 § 3B1.1(c) because it found Weston had been a"leader or organizer" of the conspiracy. It enhanced by an additional eight levels under USSG § 2C1.2(b)(2)(B) because it found that Weston committed the offense while serving in a "high level decision-making" post. Weston asked the court for a downward departure because of his record of combat service in Vietnam. The court denied the motion.
 
 II
 
 10
 At the time of trial, Federal Rule of Evidence 404(b) provided:
 
 
 11
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 12
 Fed. R. Evid. 404(b) [Effective until Dec. 1, 1991]. This court has construed Rule 404(b) as an "inclusive rule" rather than a rule of exclusion. United States v. Masters, 622 F.2d 83, 85 (4th Cir. 1980); United States v. Watford, 894 F.2d 665, 671 (4th Cir. 1990). The effect of the second sentence of 404(b) is to permit the admission of "other acts" evidence where it helps furnish the context and explanation of the crime or crimes charged. Masters, 622 F.2d at 86. In determining the admissibility of "other acts" evidence, "the district court must balance its probative value, defined as its relevance, necessity, and reliability, against the prejudice to the defendant of admitting the evidence." United States v. Hadaway, 681 F.2d 214, 217 (4th Cir. 1982). "[W]hether the probative relevance of such evidence outweighed any unfair prejudice that might result from its admission is a question the resolution of which is committed to the discretion of the district judge. The exercise of such discretion'will be reversed only if the discretion is abused.' " United States v. Ramey, 791 F.2d 317, 323 (4th Cir. 1986), quoting Hadaway, 681 F.2d at 217. Viewing the challenged evidence in the light of this precedent, we cannot find that the trial court abused its discretion in admitting the evidence or that Weston suffered undue prejudice by its admission.
 
 
 13
 Much of the challenged evidence concerns the operation of the Westons' Amway business, their solicitation of others who had business with the Academy to purchase Amway products, the records kept by the Westons of the purchases, and the possibility that Weston's customers received, or thought they received, favorable treatment as a result of their purchases of Amway products. Such evidence, properly viewed, may not actually be "other acts" evidence at all within the meaning of 404(b) but direct evidence of the conspiracy alleged in Count One of the indictment. See 1 John William Strong, et al., McCormick on Evidence § 190 at 800 n.17 (4th ed. 1992); see also United States v. Angelilli, 660 F.2d 23, 39 (2d Cir. 1981). However, even if the 404(b) standard applies, admission of this evidence was no abuse, because the evidence was relevant, necessary, and reliable. Weston's defense, in part, was that he had not improperly solicited Dunton to purchase Amway products and that his dealings with Weston were entirely legitimate. Evidence that he had made use of his Amway distributorship to generate gratuities from others having business with the Academy was thus relevant to proof of motive, intent, and knowledge. The evidence was also quite reliable, being corroborated in many cases and supported by documentation. Whatever prejudicial effect it might have had was limited by the trial court's correct instruction to the jury that it "must not consider this evidence of the similar act as a substitute for proof that the defendant committed the crime charged" and that the evidence bore only on the question whether "the defendant acted knowingly and intentionally and not because of some mistake, accident, or other innocent reasons." This court has repeatedly approved the admission of such evidence with a proper instruction. The trial court's decision to admit such evidence with a proper instruction will be disturbed only where the trial court acted "arbitrarily or irrationally." United States v. Masters, 622 F.2d 83, 88 (4th Cir. 1980).
 
 
 14
 A similar analysis reveals no abuse in the admission of the evidence of Weston's conduct in relation to other contracts for which no solicitation or acceptance of gratuities was alleged. One of Weston's grounds of defense was that he had no authority to influence certain parts of the contracting process to ensure favorable treatment for Dunton and his other patrons. Evidence of his intervention in other contract situations and of his knowledge of and ability to manipulate the contract procedures was relevant to the scope of his authority and necessary for its proper determination. This testimony, again, was corroborated by multiple witnesses and by documents from the file.
 
 
 15
 Accordingly, its admission was not abuse. A closer question is presented by the admission of evidence tending to show that Weston obtained carpet purchased for use at Academy facilities and had it installed in his own residence. This evidence, however, was relevant to the issue of intent to evade regulations, and we cannot say that the district court abused its discretion by admitting it.
 
 
 16
 Weston also assigns error to the court's intervention in the direct examination of witness James Dempsey, Weston's successor as public works officer. Weston had contended that, as public works officer, he lacked the ability to influence those decisions. He contends that this issue was of "critical" importance in resolving six of the seven counts of the indictment. Dempsey seemed to be confused by the complex and hypothetical nature of the government's questions about his actual and potential authority and to be having difficulty understanding whether he was being asked whether he personally had ever intervened in these decisions or whether someone in his position could so intervene if he or she chose. Several times during a lengthy colloquy on redirect, the court intervened to clarify government questions and to seek amplification of the witness's answer. The court also sustained defense objections to the form of government questions.
 
 
 17
 In "an involved conspiracy case, [the trial court] should not hesitate to ask questions for the purpose of developing the facts.... [H]e has no more important duty than to see that the facts are properly developed and that their bearing upon the question at issue are clearly understood by the jury." United States v. Parodi, 703 F.2d 768, 775 (4th Cir. 1983), quoting Simon v. United States, 123 F.2d 80, 83 (4th Cir. 1941). See also United States v. Hickman, 592 F.2d 931, 933 (6th Cir. 1979) (trial court must "see that the issues are not obscured and that the testimony is not misunderstood" and"has the right to interrogate witnesses for this purpose"); United States v. Cassiagnol, 420 F.2d 868, 879 (4th Cir. 1970) (same). As the Parodi court notes,
 
 
 18
 In order to determine whether the district judge so abused his prerogatives in this regard that a fair trial was denied [the defendant], it is necessary to look not merely at the challenged questions in isolation but also at the demeanor and conduct of the trial judge throughout the trial, to search the record for evidence of partiality or bias that might indicate a belief on the judge's part the [the defendant was] "guilty" or suggest that [the judge] had usurped the role of prosecutor.
 
 
 19
 703 F.2d at 776. Tested by this standard, the trial court's conduct, taken as a whole, does not raise an issue of unfairness. Though Weston supplies other instances of conduct by the trial court to which he objects, Weston's assignments of error simply do not suggest that the conduct of the trial as a whole was unfair.
 
 III
 
 20
 Weston next contends that the search warrant executed upon his residence was invalid. He denies that his failure to comply with the previous subpoena requesting the items later seized under the warrant can constitute an obstruction of justice under 18 U.S.C. § 1503. Weston argues that the documentary evidence gathered under the warrant must be suppressed because the warrant failed to comply with the formal requirements of Federal Rule of Criminal Procedure 41(c) and because its description of the items to be seized was overbroad. The challenged language in the warrant authorizes the agents to search for and seize
 
 
 21
 [a]ny and all records receipts and/or correspondence relating to James E. Weston, Public Works Officer, U.S. Naval Academy, Annapolis, MD and the performance of his duties from approximately July 1985 to June 1989 and is[sic] evidence of the crimes of theft of government property, payment of a gratuity and/or bribes to a public official.
 
 
 22
 This language occurred as item 19 in a list of records and papers to be sought by the agents and is further qualified by a paragraph setting forth the statutes whose violation was being investigated.
 
 
 23
 The Fourth Amendment's requirement of specificity in a warrant is to be applied by reading all parts of a warrant together. See Andresen v. Maryland, 427 U.S. 463, 480 (1976). When assessing the specificity of a warrant, a court must take into account the "complexity of the alleged fraud" and the "fact that the warrant circumscribed the ambit of seizable documents by category and time." United States v. Jacob, 657 F.2d 49, 52 (4th Cir. 1981). Such an assessment is to be made in a "non-technical manner" by reading facially overbroad specific provisions within the context of the conspiracy alleged by the warrant. United States v. McLaughlin, 851 F.2d 283, 286 (9th Cir. 1988). Reading the challenged warrant in this light, we find no error in the district court's refusal to suppress the evidence gathered under it. The same conclusion must apply to the denial of Weston's motion to suppress evidence because the warrant's preparer left blank the name of the magistrate to whom it was to be returned, did not place an expiration date in the blank provided, and did not strike out the proper alternative language to indicate whether the warrant could be executed in the hours of darkness or only in daylight. The warrant was served within an hour of its issuance, during daylight, and return was promptly made to the magistrate who issued it. Weston alleges no prejudice to himself or violation of his rights that would justify the stern measure of exclusion of the evidence gathered under the warrant's terms. "Insignificant and immaterial misrepresentations or omissions will not invalidate a warrant." United States v. Ofshe, 817 F.2d 1508, 1513 (11th Cir. 1987).
 
 
 24
 Weston's final challenge to his conviction is a contention that his actions constituted "mere failure to produce records pursuant to a grand jury" and thus they cannot sustain a conviction under 18 U.S.C. § 1503.
 
 
 25
 Title 18 U.S.C. § 1503 provides, in pertinent part, that "[w]hoever ... corruptly ... obstructs or impedes ... or endeavors to ... obstruct, or impede, the due administration of justice" violates the statute and is subject to its penalties. Here the evidence showed that Weston did not merely fail to comply with the subpoena but rather altered the records covered by it, provided some of them while concealing others, and represented to the FBI that he did not have any further records. The records concealed were unmistakably relevant to the grand jury's investigation and were probative of Weston's guilt of the offenses under investigation; by withholding them, Weston materially obstructed the grand jury's investigation." [T]he destruction or concealment of documents can fall within the prohibition" of § 1503 when done with the requisite corrupt motive. United States v. Rasheed, 663 F.2d 843, 852 (9th Cir. 1981). That corrupt motive is supplied when the act is done "with the purpose of obstructing justice." Rasheed, 663 F.2d at 852. The evidence was more than sufficient to sustain a verdict that Weston deliberately concealed a highly relevant portion of the subpoenaed documents with the corrupt motive of throwing the grand jury off his track. His challenge to his conviction on this count must fail.
 
 IV
 
 26
 Though we uphold Weston's conviction, we vacate the sentence imposed by the district court. To begin with, the court imposed upon Weston a two-level upward adjustment under U.S.S.G.s 3C1.1, "Obstructing or Impeding the Administration of Justice." The trial court based this adjustment upon its belief that "if[Weston] lied and he perjured himself on the stand, you can have an upward departure." The court found that Weston's "testimony on the stand was so incredible and such a cock-and-bull story, particularly about so many things.... I think if I didn't, I would encourage defendants who take the stand who want to lie and who lied as he did in this case." As the government concedes, this adjustment is directly contrary to the rule we enunciated in United States v. Dunnigan, 944 F.2d 178, 185 (4th Cir. 1991), that "[t]he rigidity of the Guidelines makes the § 3C1.1 enhancement for a disbelieved denial of guilt under oath an intolerable burden upon the defendant's right to testify in his own behalf." The government invites us to reconsider the Dunnigan rule; this, as a panel of the court, we are without power to do. Nor can we affirm on alternate alleged grounds not cited by the district court. Accordingly, Weston's sentence must be vacated and remanded on this ground alone.
 
 
 27
 The district court committed clear error in finding that Weston was a "leader or organizer" of the offense conduct and making a two-level upward adjustment therefor under U.S.S.G. § 3B1.1(c). See United States v. Barsanti, 943 F.2d 428, 439 (4th Cir. 1991); United States v. Daughtrey, 874 F.2d 213, 217-18 (4th Cir. 1989). The evidence showed that Weston usually solicited the gratuities from Dunton and other contractors. On occasion, Hook played the role of intermediary, and Dunton himself took the initiative on one key occasion, passing to Weston through Hook the word that his previous conveyances of equipment to Weston would be "forgiven" if Dunton received a specific contract. Viewed in its entirety, the evidence establishes that Weston was a solicitor of gratuities for himself rather than one who recruited members of a conspiracy, exercised control and authority over them, and claimed a larger share of the jointly generated proceeds, United States v. Smith, 914 F.2d 565, 570 (4th Cir. 1990), or who "exercised authority" and "kept the fruits of the crime," United States v. Curtis, 934 F.2d 553, 556 (4th Cir. 1991), or who "orchestrated the scheme," United States v. Ellis, 951 F.2d 580, 584-85 & n.4 (4th Cir. 1991). Simple solicitation in this context cannot amount to behavior qualifying for the § 3B1.1 enhancement. We so hold, in part, because the Guidelines themselves clearly identify the behavior for which the enhancement was given as grounds not for an enhancement but for a sentence at the top of the Guideline range. "In some cases, the public official is the instigator of the offense.... This factor may appropriately be considered in determining the placement of the sentence within the applicable guideline range." U.S.S.G. § 2C1.2, Commentary, Application Note 2. Accordingly, we conclude that grounds for an enhancement under § 3B1.1 were absent.
 
 
 28
 Lastly, we vacate because the district court granted an eight-level upward adjustment under § 2C1.2(b)(2)(B), which provides that "[i]f the gratuity was given ... to an elected official or any official holding a high level decision-making or sensitive position," the sentence is to be so enhanced. The Commentary explains that this provision covers, "for example, prosecuting attorneys, judges, agency administrators, supervisory law enforcement officers, and other government officials with similar levels of responsibility." U.S.S.G.s 2C1.2, Commentary, Application Note 1. The trial court applied this enhancement over Weston's objection on the grounds that the public works officer "makes decisions. He decides whether they're going to proceed or not proceed. He was given a warrant with a substantial amount of money and he had to make decisions as to how to spend that money." The decision of which positions are subject to this enhancement is reviewed de novo. United States v. Stephenson, 895 F.2d 867, 877-78 (2d Cir. 1990). It is apparent that any official to whom a gratuity may be offered or given will have some authority or apparent authority to make decisions that will affect the public fisc. That fact alone cannot distinguish such an official from "a multitude of personnel in the federal service." Stephenson, 895 F.2d at 878. The steep enhancement provided by § 2C1.1(b)(2)(B) is reserved for"corruption by officials sitting in high positions of public trust." 895 F.2d at 878. Important though he or she may be, the public works officer of the Academy, though clothed with a measure of discretion, is not at such a level.
 
 
 29
 Lastly, we note that the district court's refusal to grant Weston a downward departure is not reviewable upon appeal unless the court believed itself to be without power to grant such a departure. United States v. Bayerle, 898 F.2d 28, 30-31 (4th Cir. 1990). The record does not reveal that the district court in this case was laboring under such a misapprehension. Instead, the court was simply not persuaded by Weston's arguments that his military record justified a downward departure.
 
 V
 
 30
 For the foregoing reasons, we affirm Weston's conviction upon all counts but vacate his sentence and remand for resentencing consistent with this opinion. The clerk is directed to issue the mandate forthwith.
 
 
 31
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.