UNITED STATES of America, Appellee,

v.

Robert Wayne MITCHELL, Appellant.

No. 78–5066.

United States Court of Appeals,
Fourth Circuit.

Argued June 6, 1979.

Decided July 6, 1979.

**637**

Elba Gillenwater, Jr., Norton, Va. (Galbraith, Seibert, Kasserman, Farnsworth, Gillenwater & Glauser, Wheeling, W. Va., on brief), for appellant.

William D. Wilmoth, Asst. U. S. Atty., Wheeling, W. Va. (Stephen G. Jory, U. S. Atty., Elkins, W. Va., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, BUTZNER, Circuit Judge and DUMBAULD, Senior District Judge,* Western District of Pennsylvania.

ALBERT V. BRYAN, Senior Circuit Judge:

Robert Wayne Mitchell appeals from a conviction, December 1, 1977, of the interstate transportation of Cynthia ("Cindy") Ann Bippus for purposes of prostitution, as punishable under 18 U.S.C. § 2421 (1949). The critical assignment of error is the District Court's denial of his motion for a new trial for newly discovered evidence under Fed.R.Crim.P. 33.[1]

Without allowing argument the Court rejected the motion, as well as the defense counsel's accompanying affidavit, which embodied a statement made to him and his law partner, after verdict. On its face, the affidavit squarely and gravely infused a doubt into the finding of appellant's guilt. Not intending to pass upon its merits, we deem the motion of sufficient substance to require that it be heard *ore tenus* by the trial court upon the proof proffered for Mitchell and on any other relevant evidence. Accordingly, the District Court should vacate and stay the conviction until every effort is exhausted to bring the declarant named in the affidavit before the Court for interrogation. Thereafter, the Court will, of course, reinstate the conviction or grant a new trial as its judgment on the motion dictates.

A chronicle of the evidence at trial, undisputed by the prosecution, warrants this course. Cynthia Ann Bippus was a 20-year old girl living in Wheeling, West Virginia, who had never seen the appellant Mitchell prior to their introduction on the night of May 25, 1977. On Friday afternoon, May 27, 1977, Cynthia appeared in the Playmate Club, a small nightclub in Wheeling. Later Mitchell and Percy ("Buck") McGhee saw her there. The same afternoon, Buck McGhee drove his automobile from Wheeling to a restaurant, known as Long John Silvers, in Washington, Pennsylvania. Passengers in the car, besides Buck, were Cynthia and appellant Mitchell. Once at the restaurant, they ate and drank. Shortly after their arrival, a red haired woman, Judy Andre, and her male companion called "Micky" joined them.

After they had eaten, Buck McGhee and Mitchell returned to Wheeling. Cynthia re-

---

* Sitting by designation.

1. There was another assignment based on the refusal of appellant's motion for a continuance to obtain further evidence, but we find the decision was within the discretion of the Court and not abused.

mained in Pennsylvania with Judy and Micky. Subsequently, she went with Judy to the Exit 2 Truck Stop, Claysville, Pennsylvania. She stayed there until Monday, May 30, 1977, engaging in prostitution.

That same Monday, she returned to Wheeling. On arrival, she and her mother contacted the FBI authorities in Wheeling, and made complaint that appellant Mitchell had taken Cynthia to Pennsylvania for the purpose of prostitution. The FBI then commenced an investigation which led to the arrest of Mitchell on September 16, 1977, following the return of the indictment against him in the present case.

At trial, in addition to the evidence just outlined, Mitchell admitted his presence in the automobile with Buck McGhee and Cynthia, but denied taking her to Pennsylvania for prostitution purposes, and denied also any knowledge of her intentions in this regard. In any event, the jury apparently believed the Government witnesses and returned a guilty verdict on December 1, 1977. Sentencing was scheduled for January 9, 1978.

On December 6, 1977, at 4:00 p. m., one John McGhee, known as "J. C.", Buck's brother appeared at defense counsel's office and gave the following statement to him and his law partner:

That at least one (1) week prior to May 25, 1977, John C. McGhee had been talking to Cynthia Ann Bippes *(sic)* about her prostitution activities and that he had been talking to her about giving him some of her money from those activities, at which time her response was that she was not sure if she wanted to or not.

That thereafter, on Wednesday, May 25, 1977, Cindy Bippes *(sic)* called him and asked him to come to her house in Vineyard Hills, Wheeling, West Virginia; that John C. McGhee proceeded to the home of Cindy Bippes *(sic)* at which time Cindy Bippes *(sic)* told him that she had set something up for her to work in a house in Pennsylvania and that she would make him some money; to which statement John C. McGhee replied, "o.k.".

That thereafter, on Friday, May 27, 1977, said John C. McGhee was talking to said Cindy Bippes *(sic)* in front of the Playmate Club, Lynn Street, Wheeling, West Virginia, at which time Cindy Bippes *(sic)* repeated to him that she had set something up to work in a house in Pennsylvania and that she would bring him back some money.

That on Friday, May 27, 1977, Cindy Bippes *(sic)* did go to Pennsylvania where she was supposed to remain for two (2) or three (3) weeks, but that she returned near the first of the following week; that John C. McGhee saw her again during that week at which time Cindy Bippes *(sic)* gave him Twenty-five ($25.00) or Thirty Dollars ($30.00), at which time she told John C. McGhee that she had got into it with some lady who told her to do something and she would not do it, and that thereupon she got a ride out of there.

That John C. McGhee was providing this information now for the first time, because he felt that Bobby Mitchell had been found guilty of something which he did not do and that John C. McGhee had not divulged this information before because he was scared for his own safety and concerned for his own freedom, he realizing that he might be faced with the same charges as Bobby Mitchell.

This information was reduced by counsel to affidavit form for execution by John McGhee. He hesitated, reluctant to sign the affidavit. Upon further consideration, he declined to sign it. Counsel then set forth the information in an affidavit of his own. It was incorporated in a motion for new trial as constituting newly discovered evidence.

The motion and affidavit were filed with the District Court on December 8, 1977—within seven days of the jury verdict and in full accordance with Fed.R.Crim.P. 33. On January 12, 1978, the maximum sentence of five years imprisonment was passed upon him. Mitchell has remained in custody since that day. This appeal was seasonably taken.

In circumstances akin to those before us, the interest of justice is the touchstone for consideration. Fed.R.Crim.P. 33; 2 Wright, Federal Practice & Procedure: Criminal § 557, at 515–16 & n. 97 (1969). Recognized legal authorities have endorsed the procedure we presently direct on this motion for a new trial centered upon newly discovered evidence. *E.g., id.* § 557, at 533 & nn. 55 & 56. Furthermore, the Fifth Circuit accented the point in *Lyles v. United States,* 272 F.2d 910, 913 (5th Cir. 1959) in these terms:

> Under all of the facts and circumstances of the case, including the requests of the parties, we think that the district court certainly, and perhaps this Court also, will be in better position to exercise its functions if the evidence is fully developed upon a hearing. The judgment is, accordingly, vacated and the cause remanded for an oral hearing of such testimony as may be offered in support of and in opposition to the motion for new trial.

The judgment on appeal will be

Vacated and Remanded for Hearing on Motion for New Trial.