976 F.2d 728
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Timmy Allen RICE, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Marcus Tyrone Mcham, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Ronald Eugene Rice, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Jerrell Lamar Meadows, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
John W. Stevens, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Peggy Jean Rice, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Henry A. Rice, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Delton Scott Stevens, Defendant-Appellant.
 Nos. 91-5401, 91-5402, 91-5403, 91-5404, 91-5405, 91-5528,
91-5529, 91-5533.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 6, 1992
Decided: September 29, 1992
 
 Appeals from the United States District Court for the District of South Carolina, at Spartanburg. G. Ross Anderson, Jr., District Judge.
 ARGUED: Hemphill P. Pride, II, Columbia, South Carolina; Clarence Rauch Wise, Wise & Tunstall, Greenwood, South Carolina; Jerry M. Screen, Screen & Levy, Columbia, South Carolina; Charles B. Patterson, Greenville, South Carolina, for Appellants.
 David Calhoun Stevens, Assistant United States Attorney, Columbia, South Carolina, for Appellee.
 ON BRIEF: E. Bart Daniel, United States Attorney, Columbia, South Carolina, for Appellee.
 D.S.C.
 Affirmed.
 Before WIDENER and LUTTIG, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Eight defendants were tried together for conspiracy to possess with intent to distribute crack cocaine, and related offenses. 21 U.S.C. §§ 841, 846, 856, 853; 18 U.S.C. § 924(c). All eight defendants were convicted on the conspiracy count, 21 U.S.C. § 846, and on the possession with intent to distribute count. 21 U.S.C.s 841. Four of the defendants, Henry Rice and Peggy Rice and their sons Ronald and Timmy Rice, were convicted of maintaining an establishment at 453 Beacon Street for the purpose of distributing cocaine. 21 U.S.C. § 856. Ronald and Timmy Rice also were convicted of maintaining the house next door, 449 Beacon Street, for the same purpose. 21 U.S.C. § 856. Henry Rice's ownership interest in 453 Beacon Street was forfeited. 21 U.S.C. § 856 and 853(a)(2). Finally, Timmy Rice was convicted of using and carrying a firearm during a drug trafficking crime. 18 U.S.C. § 924(c).
 
 
 2
 The defendants now appeal various issues relating to their convictions and sentences. We affirm.
 
 
 3
 * On July 26, 1990 a five count indictment was returned against nine individuals. One of the nine, Marshall Lewis Jefferson, was granted a severance and does not join in this appeal. The remaining eight were tried together and convicted on the counts listed above. They are:
 
 Henry A. Rice
 Peggy Jean Rice
 Timmy Allen Rice
 Ronald Eugene Rice
 John W. Stevens
 Delton S. Stevens
 Marcus Tyrone McHam, and
 
 4
 Jerrell Lamar Meadows.
 
 
 5
 Henry and Peggy Rice lived at 453 Beacon Street in Spartanburg, South Carolina. Their house was at the end of a row of houses near the Fair Forest Creek housing project. Although the record is not entirely clear on the point, there is evidence to suggest that one of Henry and Peggy's sons, Ronald Rice, lived with them at 453. Henry and Peggy's son Timmy lived in the house next door, 449 Beacon Street, with his girlfriend and their children.
 
 
 6
 The Government's case contends generally that all of the defendants were part of a conspiracy to distribute crack cocaine, the leaders of the conspiracy being Ronald and Timmy Rice. According to the Government's theory of the case, Henry and Peggy Rice knowingly allowed the use of their house and yard as a place for distributing crack, in other words as a crack house, and participated in the proceeds from the crack sales or possibly had some involvement in managing their sons' crack distributing business. The remainder of the defendants, the Government contended, worked as crack salesmen, selling individual crack cocaine, known as rocks, to users.
 
 
 7
 On appeal several of the defendants argue that the Government did not introduce evidence sufficient to sustain their individual convictions on the various counts. It is, therefore, necessary to review the evidence introduced against each of the defendants individually.
 
 A.Henry Rice
 
 8
 The proof of Henry Rice's connection with the conspiracy depends upon his connection to the property at 453 Beacon Street, and upon the use of this property to facilitate the conspiracy. The Government offered no evidence of overt acts by Henry Rice to exercise any actual dominion or control over the house or property at 453 Beacon Street, or that Mr. Rice participated in any drug transaction. The Government proved, however, that Henry Rice is the owner of 453 Beacon Street. There also was testimony identifying 453 Beacon Street as Timmy Rice's "mamma and daddy's house," and that 453 Beacon Street was the home of Henry and Peggy Rice, from which the jury could infer that Henry and Peggy Rice lived at 453 Beacon Street during the conspiracy.
 
 
 9
 Several witnesses described drug transactions taking place at least in part on Henry and Peggy Rice's property. An undercover agent, Officer Bartee, testified that he bought crack cocaine from Marshall Lewis Jefferson. After arranging the sale, Jefferson entered the "first house on the right" on Beacon Street, and returned with crack cocaine to make the sale. A second witness, Harold Robinson, testified that he distributed crack for Ronnie Rice.[1] According to his testimony, Ronnie would get the crack from the backyard or driveway at 453 Beacon Street.
 
 
 10
 There also was testimony that defendants Meadows, McHam and John Stevens were seen at 453 Beacon street every day. On one occasion, a police officer saw John Stevens leave the driveway of 453 and then make what appeared from a distance to be a drug sale. When the police arrested Stevens immediately thereafter, they found a bag containing one rock of crack cocaine in his mouth. Another defendant, Marcus McHam, was seen dealing drugs in front of 453 and, when arrested, was caught with one rock of crack.
 
 
 11
 In October 1987, a member of the Spartanburg Police, Officer Parker, visited Henry and Peggy Rice at 453. According to his testimony, Officer Parker told Mr. and Mrs. Rice that drugs were being sold from the front yard of 453 on a regular basis and that the police had observed "drug people running in and out of their residence." Officer Parker warned Mr. and Mrs. Rice that they would be arrested if they let the drug trade continue in and around their house and suggested that they call the police if they had any problem controlling the people on their property. Neither Henry nor Peggy Rice ever contacted Officer Parker thereafter. Peggy Rice denied being warned about drug sales taking place in the yard. Henry Rice did not testify.
 
 
 12
 When the police raided both houses on May 3, 1990, they conducted a search. They found no drugs or paraphernalia inside 453, but did find some crack cocaine under a piece of metal beside the driveway at 453.
 
 B.Peggy Rice
 
 13
 In addition to the evidence concerning drug activities at 453 Beacon Street, Harold Robinson testified that, after he quit dealing for another crack dealer, Robinson "went [to work] for the Rices." When asked which Rices he was talking about, Robinson answered "Ronnie Rice and Peggy Rice." On cross-examination, Robinson admitted that he did not know Peggy Rice and that he could not identify her in the courtroom, but his testimony that he worked for her was not qualified.
 
 C.Timmy Rice
 
 14
 The evidence that Timmy Rice was involved in a drug conspiracy clearly was sufficient to support the jury verdicts against him, but will be reviewed nonetheless because it establishes the existence of a drug conspiracy. Harold Robinson testified that he first went to Timmy Rice's house, 449 Beacon Street, in 1990. Robinson recalled on one occasion seeing plastic bags and rocks of crack cocaine spread out on a table in Timmy Rice's house. Although he could not identify all of the people present, he did recall that Timmy Rice, Ronnie Rice and Jerrell Lamar Meadows were there. Robinson also testified that he once paid Timmy Rice for a drug sale that Robinson had made on behalf of Reggie Rice.
 
 
 15
 Jerry Lee Lewis Smith testified that he and his brother went to Timmy Rice's house on two occasions to buy crack cocaine. On one occasion Smith's brother bought $1,500 worth of crack from Rice. On both occasions, Smith's brother and Rice went around to the back of the house while Smith waited in the front yard, so it was impossible for Smith to see the transaction with his own eyes. However, on at least one occasion, after Smith's brother returned from the back yard with Timmy Rice and Smith and his brother got into their car to leave, Smith asked his brother if he had gotten what they wanted and Smith's brother responded by showing him a bag of cocaine.
 
 
 16
 John Gist testified that he worked for Timmy Rice selling drugs, and that he met and talked with Rice at Rice's house, 449 Beacon Street on at least two occasions. At the first meeting, Gist proposed that he work for Rice as a dealer, and Rice agreed to give Gist a try. Gist did not receive the crack from Rice himself. Instead, Rice arranged for a third party to transfer the crack to Gist. After Gist sold some of the crack, he gave the proceeds to John Stevens, who was then supposed to give the money to Rice. At the second meeting with Rice at 449 Beacon Street, Timmy Rice eventually paid Gist $200 for selling drugs. The payment was made in front of Rice's house.
 
 
 17
 When the police raided Timmy Rice's house on May 3, 1990, they found Rice in his bed. On the bed stand beside the bed there was a loaded 9 mm handgun. When the officer first confronted Rice in the bedroom, Rice reached for the handgun as the officer entered the room. The officer was armed with a shotgun and threatened to kill Rice if he did not reach back from the handgun. Rice complied.
 
 
 18
 The police found no crack cocaine anywhere on the premises; however, they found over $18,000 in cash inside a locked safe in the bedroom. They also found a small amount of marijuana, for which Rice's girlfriend was indicted on state drug possession charges.
 
 D.Ronald Eugene Rice
 
 19
 Harold Robinson testified that he sold drugs for Ronnie Rice. He got crack cocaine from Ronnie and paid Ronnie the proceeds, less his own share. He brought the proceeds to Ronnie, either at 453 Beacon Street or to the Fair Forest Court Apartments. Robinson testified, as indicated above, that Ronnie was present, along with Timmy Rice and Jerrell Lamar Meadows, when Robinson saw crack cocaine and plastic bags spread out on the table inside Timmy Rice's house. Robinson was arrested for attempting to distribute crack cocaine. He testified that Ronnie had given him the drugs he had in his possession when he was arrested.
 
 
 20
 When Jerry Lee Lewis Smith and his brother went to Timmy Rice's house to buy crack, Ronnie Rice was sitting on the porch. According to Smith, Ronnie had a gun, apparently a 9 mm pistol. John Gist testified that he got crack cocaine to sell from Ronnie Rice in about 1987. According to Gist, Ronnie Rice brought the crack from Rice's house on Beacon Street. It is not clear whether Gist was referring to 449 or 453 Beacon Street.
 
 E.Marcus Tyrone McHam
 
 21
 Harold Robinson testified that McHam sold drugs for Timmy Rice. A narcotics officer testified that he saw McHam leaning into a car, apparently selling drugs to the driver. McHam was arrested and a rock of crack cocaine was found in his pocket. When the police conducted the raid on May 3, 1990, McHam was found standing in the driveway of 453 Beacon Street with several other men. Two bags of crack cocaine were found within five or six feet of where McHam was standing.
 
 F.Jerrell Lamar Meadows
 
 22
 Meadows, also known as June Bug, was among the men found standing in the driveway at 453 Beacon Street at the time of the raid. In addition, Harold Robinson testified that Meadows worked for the Rices. Robinson testified that Meadows' job was to distribute bags of crack cocaine to the street dealers and to collect money from them. Robinson testified that Meadows distributed drugs on a daily basis.
 
 G.John W. Stevens
 
 23
 Harold Robinson testified that John Stevens distributed crack to the street dealers and sold some himself too. On January 31, 1990, a narcotics officer saw Stevens drive out of the driveway of one of the Rice houses and then stop a short time later and make what appeared to be a drug sale to a young woman. When he was pulled over by police immediately thereafter, a bag containing one rock of crack cocaine was found in Stevens' mouth.
 
 
 24
 On September 6, 1990, several months after the defendants were indicted,[2] the police made a surveillance videotape of activities in front of the Rice houses. John Gist, one of the people shown in the videotape, narrated the videotape at trial. According to Gist's testimony, the tape shows a meeting between John Stevens and Gist during which Gist gave Stevens the proceeds of crack sales so that Stevens would give the money to Timmy Rice.
 
 
 25
 When the police conducted the raid on May 3, 1990, officer McNeely saw Stevens drop something as he approached Stevens. McNeely later found a bag of crack cocaine under Stevens' foot.
 
 H.Delton Scott Stevens
 
 26
 Harold Robinson testified that he had seen Delton Stevens distributing crack cocaine. Robinson was describing the roles of the various members of Timmy Rice's drug organization. In addition, Stevens appeared on the videotape narrated by John Gist. The Government elicited the following testimony from Gist regarding Delton Stevens' actions on the videotape:
 
 
 27
 Q.... And who else is in that picture there?
 
 
 28
 A.Delton Stevens.
 
 
 29
 ...
 
 
 30
 Q.Okay. Now, all those fellows out there, do you know what they're doing?
 
 
 31
 A.Selling drugs.
 
 
 32
 Q.They're selling crack?
 
 
 33
 A.Yes, sir.
 
 
 34
 When the police conducted the raid on May 3, 1990, Delton Stevens was among the men found standing in the driveway of 453 Beacon Street. The police found a bag of crack on the passenger-side front wheel of a truck parked in the driveway. This crack was five to six feet from where Delton Stevens and the other men were standing.
 
 II
 
 35
 The defendants first argue that the district court abused its discretion in denying them a bill of particulars. According to the defendants, the indictment failed to allege specific acts in furtherance of the alleged conspiracy, failed to attribute specific acts to specific defendants, and failed to specify the time periods during which specific defendants allegedly were involved in the conspiracy. The defendants argue that this lack of specificity prejudiced them by denying them the opportunity to present alibis and generally by making it harder to respond to prepare their defense. The Government responds that its open-file policy gave the defendants access to "every statement and every piece of evidence" that the Government had against the defendants. In addition, the Government notes without refutation that the Assistant U.S. Attorney handling the case went beyond the open-file policy and actually met with the attorney for three of the defendants and told him what witnesses were expected to be called, etc. No claim is made that the Government held back information.
 
 
 36
 The Government's maintenance of an open-file policy can cure an indictment that otherwise may not be sufficiently detailed so as adequately to inform the defendant of the charges against him in order that he may prepare a defense. See, e.g., United States v. Duncan, 598 F.2d 839, 849 (4th Cir.), cert. denied, 444 U.S. 871 (1979). We review a district court's decision to deny a bill of particulars on an abuse of discretion standard. United States v. MacDougall, 790 F.2d 1135, 1153 (4th Cir. 1986). In light of the Government's open-file policy, the defendants suggest nothing that would lead us to conclude that the district court abused its discretion in denying their motion for a bill of particulars, and we hold that it did not.
 
 III
 
 37
 Three of the defendants, Henry Rice, Peggy Rice, and Delton Scott Stevens, argue that the evidence was not sufficient to support their convictions for conspiracy to possess with intent to distribute crack cocaine. 21 U.S.C. § 846, 841.
 
 
 38
 As an appellate court reviewing a conviction on appeal, we must uphold the conviction if, taking the evidence in the light most favorable to the Government, a reasonable jury could have found the defendant guilty. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Jones, 945 F.2d 747, 748 (4th Cir. 1991).
 
 
 39
 There clearly was sufficient evidence for the jury to find the existence of a conspiracy to distribute crack cocaine, involving, at least, Ronnie and Timmy Rice. The critical question, then, is whether, taking the evidence in the light most favorable to the Government, a reasonable jury could have found that Henry and Peggy Rice knew of the conspiracy's purpose and took some action indicating their participation, and that their actions amounted to more than mere acquiescence or approval of the conspiracy or presence at the scene of drug distribution. We are of opinion that the evidence is sufficient.
 
 
 40
 A reasonable jury could find that Peggy Rice was a member of the conspiracy from the testimony of Harold Robinson to the effect that he sold drugs for Timmy and Peggy Rice. Although Robinson admitted that he had never met Peggy Rice, he still may have known of her involvement with the conspiracy. To the extent that this admission reduces the credibility of Robinson's testimony, that determination is a question for the jury, which we will not disturb on appeal. Also, her house was proven beyond any doubt to be a crack house. Sales were made on the property, money was delivered to the property, and drugs were distributed from the property. While none of this may be conclusive standing alone, it is evidence which tends to prove the participation of Peggy Rice in the conspiracy.
 
 
 41
 We are also of opinion the evidence is sufficient to sustain the verdict against Henry Rice. From the evidence introduced, a reasonable jury could conclude that Henry Rice owned the property and lived at 453 Beacon Street and, therefore, was present during the course of the conspiracy. From the testimony of the undercover agent, Officer Bartee, and of Harold Robinson, and from the discovery of crack cocaine under a piece of tin near the driveway at 453, the jury could infer that drugs were kept on the property at 453 in furtherance of the conspiracy. From the testimony of Officer Parker, who warned Henry and Peggy Rice that the police had seen drug sales taking place in and around their property, the jury could infer that Henry Rice knew about the drug conspiracy taking place in and around his home. From the evidence that Henry Rice was the owner of 453 Beacon Street, the jury could infer that Henry Rice had dominion and control over the house and property. Finally, the testimony of Officer Parker that, even after his warning to them, neither Henry nor Peggy Rice contacted him for help in controlling the drug activity around their property, the jury could infer that Henry Rice knowingly allowed his house and property to be used to facilitate the conspiracy. We are of opinion, therefore, that the evidence, though circumstantial, is sufficient to sustain Henry Rice's conviction on the conspiracy charge. Cf. United States v. Williams-Hendricks, 805 F.2d 496, 503 (5th Cir. 1986)("Because [the defendant] owned the truck and exercised dominion and control over the truck, and because of the evidence of his knowledge of the marijuana, it follows that his allowing the truck to be used for the illicit activity resulted from at least a tacit agreement with his son to that effect.").
 
 IV
 
 42
 Delton Scott Stevens argues that the evidence was insufficient to sustain his conviction on both the conspiracy count and on the possession with intent to distribute count. We disagree. The jury could infer from Harold Robinson's testimony not only that Stevens sold crack cocaine, which would establish the possession with intent to distribute count, but also that Stevens worked for Timmy Rice, which would establish the conspiracy count.
 
 V
 
 43
 Henry and Peggy Rice challenge the sufficiency of the evidence to sustain their convictions on the possession with intent to distribute count. 21 U.S.C. § 841. They argue that no evidence was introduced to show that either of them ever actually possessed any crack cocaine. Because we have found the evidence sufficient to sustain their convictions on the conspiracy count, their argument fails. This is the rule of Pinkerton v. United States, 328 U.S. 640 (1946), which holds all conspirators liable for unlawful substantive offenses committed in furtherance of the conspiracy, although some of them may not have participated in the discrete substantive offense. 328 U.S. at 645. See United States v. Cummings, 937 F.2d 941, 944 (4th Cir.), cert. denied, 60 U.S.L.W. 3343 (U.S. 1991). Because the evidence clearly is sufficient to support the conviction of several of the defendants for possessing crack cocaine with intent to distribute it, and in fact they actually did distribute the cocaine, and because this possession with intent to distribute was done in furtherance of the conspiracy, but also was the central object of the conspiracy, we find the evidence sufficient to sustain the Rices' convictions on the § 841 count.
 
 VI
 
 44
 Henry and Peggy Rice challenge the sufficiency of the evidence to sustain their convictions under 21 U.S.C. § 856, which provides:
 
 
 45
 (a) Except as authorized by this title, it shall be unlawful to-
 
 
 46
 (1) knowingly open or maintain any place for the purpose of manufacturing, distributing, or using any controlled substance;
 
 
 47
 (2) manage or control any building, room, or enclosure, ... and knowingly and intentionally ... make available for use, with or without compensation, the building, room, or enclosure for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.
 
 
 48
 We reject their challenge.
 
 
 49
 A jury could infer that crack was stored inside of 453 Beacon Street from the testimony of Officer Bartee, who testified that after arranging for a crack purchase with Marshall Jefferson, Jefferson went into the "first house on the right" on Beacon Street and returned with the crack cocaine to make the sale. In addition, crack cocaine was found in the yard at 453 near the driveway, and Harold Robinson testified that Timmy Rice got saleable amounts of crack from the backyard at 453. The evidence also tended to show that Henry Rice owned the house and lot at 453 Beacon Street and that he and Peggy Rice lived there during the course of the conspiracy. From this, the jury could infer that Henry and Peggy Rice controlled the premises at 453 Beacon Street. From the warning by Spartanburg Police Officer Parker, the jury would be permitted to infer that Henry and Peggy Rice knew that drug distributions were taking place on their property, and, in combination with the evidence that drugs were being kept in the house and on the property at 453, therefore, that they knowingly and intentionally made the premises available at least for storing or distributing drugs. Moreover, there was evidence that drugs were delivered from 453 Beacon Street and that drug payment was delivered to the same address, which tends to show that the premises were used for the purpose of unlawfully distributing drugs in violation of the statute.[3]
 
 VII
 
 50
 Henry Rice argues that the evidence is insufficient to sustain the forfeiture of his interest in 453 Beacon Street under 21 U.S.C. § 853. Section 853 provides that upon conviction for a qualifying offense, which includes the § 856 charge, any person shall forfeit "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violation." 21 U.S.C. § 853(a)(2). In light of our holding that the evidence was sufficient for a jury to find that Henry and Peggy Rice violated § 856 by knowingly and intentionally making their premises available for the purpose of storing and distributing of crack cocaine, we also conclude that there was sufficient evidence to sustain the forfeiture.
 
 VIII
 
 51
 The defendants argue that the district court erred in refusing to charge the jury on the offense of simple possession of cocaine, a lesser included offense of the offense of possession with intent to distribute cocaine. It is well settled that a defendant is entitled to an instruction on a lesser included offense when the evidence "would permit a jury rationally to find [the defendant] guilty of the lesser offense and acquit him of the greater." Keeble v. United States, 412 U.S. 205, 208 (1973). We need not decide whether the defendants were entitled to an instruction on the lesser included offense of simple possession, however, because if it was error to refuse the charge, the error was harmless.
 
 
 52
 Because all of the defendants were convicted on the conspiracy count, and because the jury necessarily credited the testimony suggesting that members of the conspiracy possessed cocaine with intent to distribute it, all of the defendants are held liable for possession with intent to distribute under the Pinkerton rule discussed above. This result would apply even if the jury reasonably could have found that one or more of the defendants did not actually possess a certain quantity of crack with the intent to distribute it. The verdict against each of the individual defendants, therefore, would not have been different had the district court instructed the jury on the lesser included offense of simple possession. We are of opinion, therefore, that, even if the district court erred in refusing to give the requested instruction on simple possession, the failure to give the instruction did not prejudice the defendants.
 
 IX
 
 53
 The defendants argue next that the district court erred in admitting into evidence a video tape that was recorded approximately six weeks after the date of the indictment. The defendants argue that this video tape was inadmissible under sections 404 and 403 of the Federal Rules of Evidence, because its only possible relevance to the crimes charged against the defendants was to show bad character or the propensity to commit crimes, which is not permitted under 404, and because any legitimate probative value that the tape may have was outweighed by the danger of prejudicial effect on the jury.
 
 
 54
 The Government argues that the tape is relevant to show that a drug conspiracy existed as of the date of the indictment and that two of the defendants pictured in the tape, Delton Stevens and John Stevens, were members of the conspiracy. The Government argues that the tape and accompanying testimony tend to prove that the conspiracy not only existed as of the date that the tape was recorded, but also that it was a continuation of a conspiracy that existed as of the date of the indictment.
 
 
 55
 The district court admitted the video tape over the defendants' objection. However, there was no request for a limiting instruction regarding the jury's consideration of the videotape and none was given. The tape was narrated by John Gist, who is shown on the video tape selling drugs but who was not a defendant at the trial. Gist testified that he had worked for Ronnie Rice selling drugs a number of years before the tape was made and that he had started working for Rice again shortly before the tape was made. According to Gist's narration, the tape shows a young man, Eric Johnson, who was not one of the defendants and who was out in the Fair Forest Creek area selling drugs on the day that the tape was made, go up to one of the Rice's house. The tape shows Gist selling a rock of crack cocaine that, according to Gist, he had gotten from Timmy Rice. The tape also shows a group of men, including Delton Stevens, selling drugs. It also shows John Stevens driving a white Nissan, and Gist giving Stevens some money as payment for crack cocaine with the understanding that Stevens would deliver the money and a message to Timmy Rice. Evidence of other bad acts is not admissible "to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b). It is admissible, however, to prove other facts "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. That the other bad acts occurred after, rather than before, the indictment does not alter this rule. See, e.g., United States v. Hines, 717 F.2d 1481, 1488-89 (4th Cir.), cert. denied, 467 U.S. 1214 (1984). United States v. Hadaway, 681 F.2d 214 (4th Cir. 1982). In determining whether evidence is admissible under Rule 404(b) and Rule 403, the district court must balance its probative value against the prejudice to the defendants. Hadaway, 681 F.2d at 217; Fed.R.Evid. 403. This decision is committed to the district court's discretion and will be reversed only if the discretion is abused. Hadaway, 681 F.2d at 217. United States v. Echeverri-Jaramillo, 777 F.2d 933, 936 (4th Cir.), cert. denied, 475 U.S. 1031 (1986).
 
 
 56
 We are of opinion that the district court did not abuse its discretion in admitting the video tape accompanied by the narration of the witness John Gist. The tape and narration are relevant to prove that a conspiracy existed at the time that the tape was recorded, that this conspiracy had continued for some time prior to the indictment, that the defendants John Stevens and Delton Stevens were members of this conspiracy, and to show a common scheme or plan. An instruction to the jury so limiting their consideration of the evidence would have reduced any prejudice caused by the likelihood that the jury would infer that the defendants shown on the tape had sold drugs before the indictment because they were seen selling them after the indictment. However, such an instruction was not requested, and we are of opinion that if error at all, it was not so plain error as to constitute an abuse of discretion for the district court to have admitted the evidence absent such an instruction.
 
 X
 
 57
 Some of the defendants next challenge their sentences.[4] They first argue that the Government did not offer sufficient evidence to support the quantity of cocaine attributed to the conspiracy. The presentence report estimated that the conspiracy had handled a total of 126 kilograms of crack cocaine during the entire course of its existence, April, 1987 to September, 1990, a period of 42 months. According to the report, "based on testimony in court" this conspiracy sold at least 100 grams of crack cocaine per day, 10 packages each containing 10 grams of cocaine. Multiplying by 30 days per month and 42 months results in the estimated total of 126 kilograms.
 
 
 58
 Delton Stevens, Timmy Rice, Ronnie Rice and Peggy Rice, filed objections to the presentence report challenging the probation officer's estimate. They declined, however, the district court's invitation to offer new evidence on the issue, instead choosing to stand on the trial record. Peggy Rice dropped her objection at her sentencing hearing.
 
 
 59
 The district court found at Timmy Rice's sentencing hearing that "the record contains sufficient and adequate evidence to show that the calculations of the probation officer on 127 kilograms of crack/cocaine and the same objection in paragraph eight with reference to 126 kilograms of crack/cocaine are adequately supported by the evidence in the record." It made a similar finding at Ronnie Rice's sentencing hearing, and attributed 18 kilograms to Delton Stevens for his six-month participation. The district court made no other finding of fact as to the quantity of drugs involved in the conspiracy. It did factually conclude, however, that the defendants were operating a drug supermarket. We think this is supported by the record.
 
 
 60
 A court may approximate the quantity of drugs involved in a conspiracy when there has been no seizure or when the amount seized does not reflect the scale of the offense. U.S.S.G.s 2D1.4 application note 2. In view of the objection made, which was simply to the effect that the evidence in the case did not support the probation officer's finding as to the amount of drugs involved, and the district court's finding that the record in the case did support that conclusion, we have examined the record and are of opinion that the district court's finding of fact is supported by the record. There is no doubt that the jury's conclusion that a conspiracy to distribute cocaine involving all of the defendants existed. The record plainly shows that it was centered around the Rices, Timmy and Ronnie, and their parents, Henry and Peggy, and their two homes which were next door to each other. Sale after sale after sale of cocaine was proven, many perfectly open and in daylight, so that until curbed, it might well be said that the defendants in this case simply flaunted their illicit drug operation.
 
 XI
 
 61
 Delton Stevens makes the same argument as to the evidence to support the district court's findings of fact as to the quantity of drugs involved, and we apply to his objection the same rule and find that this contention is without merit.
 
 
 62
 Stevens' real complaint, however, seems to be that the record does not support a finding that he was involved in the conspiracy for a sixmonths' period as made in the presentence report. While it may be true that there is no explicit testimony in open court to support this finding, the fact is that the six-months' period was actually argued to the court at sentencing by Stevens' own attorney as follows:
 
 
 63
 "In addition to that, the testimony, I am not sure if it is testimony at court, but I know during the discovery there was admission made on the part of the law enforcement officers that Mr. Delton Stevens was only involved for about six months in this operation; that was during the last six months prior to the arrest."
 
 
 64
 In view of this argument and the findings of the district court with respect to the quantity, which we have affirmed, we are also of opinion this last contention of Delton Stevens is without merit.
 
 
 65
 The judgment of the district court with respect to convictions, forfeiture and sentences is accordingly
 
 
 66
 AFFIRMED.
 
 
 
 [1]
 According to the evidence adduced at trial, Ronald or Timmy Rice generally would give a bag of 50 rocks to one of the lower-level salesmen. The salesman then would sell the rocks individually for whatever they would bring, receiving all told an average of $1250 for the bag of 50. Of the $1250, the salesman would pay Ronald or Timmy Rice $1000 and keep the remaining $250
 
 
 [2]
 The defendants were indicted July 26, 1990. A superseding indictment was not returned after the September 6 videotape was made. The defendants were convicted under the July 26 indictment
 
 
 [3]
 While the brief contains no explicit challenge of Timmy and Ronnie Rice for conviction of the same offense at 449 Beacon Street, on the assumption that one is made, we find it to be without merit
 
 
 [4]
 McHam made no objection to the presentence report at his sentencing, so we do not consider any question of amount of cocaine mentioned on appeal as applied to him. Meadows, also, made no objection at sentencing to the presentence report. We apply the same rule to him as made to McHam